ELLEN TILYOU, Appellant, *v.* THE TOWN OF GRAVESEND et al., Respondents.

In 1871 the electors of the town of Gravesend passed a resolution, to the effect that the common lands of the town on Coney Island should thereafter be let only by auction to the highest bidder, and prohibited the letting of any lot at a time more than one year prior to the expiration of any existing lease. The same restriction was contained in a resolution passed in 1866, before the system of public lettings was adopted. In 1878 a resolution was adopted, amending that of 1871, by adding a provision authorizing the commissioners to renew any existing lease upon terms they may deem most advantageous to the town. *Held*, that this did not authorize the commissioners to renew leases without restriction as to the time when the power should be exercised; but, that it was subject to the restriction contained in the resolution of 1871; and that a renewal lease, executed more than a year prior to the expiration of an existing lease of the lot, was void.

(Argued January 21, 1887; decided February 8, 1887.)

APPEAL from order of the General Term of the Supreme Court, in the second judicial department, entered upon an order made December 9, 1884, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiff to have a renewal lease executed to her by the commissioners of common lands of

the town of Gravesend, of certain lots owned by the town, situate on Coney Island, and part of what is known as the common lands of the town, declared to be valid, and restraining the town and its officers from accepting bids for the fee of the lot.

The court found, among other things, the following:

" On April 3, 1866, the electors of said town, in town meeting assembled, passed a resolution providing, among other things, concerning said common lands, that the commissioners of common lands should have no power to grant leases, or agree to grant a lease of any such lands, until within one year of the expiration of any existing lease thereon, and for terms not exceeding ten years; on April 4, 1871, such electors in like town meeting, passed a resolution, among other things, that such lands must be let only by public auction, by said commissioners for terms not exceeding ten years; and that no lot should be let at a time more than one year prior to the expiration of any lease thereon; and on April 2, 1878, such electors, in like meeting, passed a resolution that said resolution, passed in 1871, be amended by adding thereto that such commissioners are authorized to renew any existing lease on any of said lands upon such terms as they may deem most advantageous to said town.

On November 12, 1872, the then commissioners of common lands did, after conformity to said resolutions of 1866 and 1871, by instrument in writing, lease said lots twenty-four and twenty-seven, respectively, to Francis Swift at the rent of $70 and $230, respectively, per annum, for a term of ten years, respectively, from November 12, 1872, and said Swift entered into possession thereof, and subsequently assigned said leases to plaintiff, who entered into possession.

On March 1, 1880, the then three commissioners of common lands, without any public notice, auction, or competition, did sign and execute to said plaintiff an instrument in writing, which, in terms, purports to be a lease by said town, through said commissioners to plaintiff, of said lots twenty-four and twenty-seven for a term of ten years, from

November 12, 1882, at rentals of $75 and $235, respectively, per annum, and plaintiff now claims to hold possession of said lots under said new leases."

Further facts appear in the opinion.

*Edward S. Rapallo* for appellant. The town of Gravesend is seized and possessed of its common lands as a body corporate and not as a body politic. The commissioners of common lands are its agents to transact specific corporate business; and are in no sense political officers. (*Denton* v. *Jackson*, 2 Johns. Ch. 320; *North Hempstead* v. *Hempstead*, 2 Wend. 134; *People* v. *N. Y. & M. B. R. R. Co.*, 84 N. Y. 568.) The resolutions, properly construed, authorized the commissioners, without public notice, auction or competition, at the time of the renewal, to grant to the plaintiff a renewal of her leases for ten years. (Wood's History of L. I., 3, 4, 10, 13, 15, 18, 28, 74, 87; 2 Greenl. 166, 167; 1 Kent & Radc. 331, § 11; 2 R. L. 131, § 12; 1 R. S. 337; 5 Stat. at Large [Edmunds' ed.] 524.) The resolution of 1871 confers the power to make new leases. It also authorizes the renewal of existing ones. (2 Bouv. 27; *Le Roy* v. *Beard*, 8 How. 468.) The resolution also contained the terms upon which leases might be made and renewed. (*Le Roy* v. *Beard*, 8 How. 464; *Howard* v. *Baillie*, 2 H. Bl. 618; Story on Agency, 58; *Jeffreys* v. *Bigelow*, 13 Wend. 527; *Overseers of Hamilton* v. *Overseers of Eaton*, 6 Cow. 358; *Rogers* v. *Kneeland*, 10 Wend. 252.) The resolution does not alter the power of the commissioners as to the terms of renewals. (*Hunt* v. *Whitsett*, 4 Col. 84, 90; *Hutchinson* v. *Lord*, 1 Wis. 314; 2 Burr. Tit. Terms; Abb. Law Dict. Tit. Terms.) The general tenor of the two resolutions is in favor of what was done, and the manner of its execution; and the evident intention of the town being preserved, no violence is done to the legal force of the resolutions, even though objection may be taken to the construction of particular words. (*Le Roy* v. *Beard*, 8 How. 468; *Vanada* v. *Hopkins*, 1 Marsh, 287.) The agents did what seemed from the resolutions plausible

and correct, and even though it should now turn out to be wrong, as intended by the principal, the latter is still bound. (*Le Roy* v. *Beard*, 8 How. 468 ; *Lomax* v. *Cartwright*, 3 Wash. C. C. 151 ; *Andrews* v. *Kneeland*, 6 Cow. 358.) The person who deals with the agent is required, like him, to look to the instrument to see the extent of the power, and if it be ambiguous so as to mislead them both, the injurious consequences should fall on the principal for not employing clearer terms. (7 B. & Cres. 278 ; 1 Peters, 290 ; *Baring* v. *Corrie*, 2 B. & Ald. 143 ; *Courcier* v. *Ritter*, 4 Wash. C. C. 551 ; *Sandford* v. *Handy*, 23 Wend. 268.)

*William J. Gaynor* for respondents. A repealing, or subsequent conflicting statute does not change or affect the prior act, except in so far as it expressly changes it or is irreconcilably repugnant to it. (Sedgwick on Constr. of Stat. [2d ed.] 97, 98, 102, 106 ; *People* v. *Palmer*, 52 N. Y. 83 ; *Hawkins* v. *Mayor, etc.*, 64 id. 18.) Persons dealing with public agents or officers are bound to take notice of their powers, and inquire into the extent thereof, and the manner in which the same must be executed. (Dillon on Munic. Corp. [3d ed.] §§ 445, 447 ; *Parsel* v. *Barnes*, 25 Ark. 261 ; *Smith* v. *City of Newburgh*, 77 N. Y. 130 ; *McDonald* v. *Mayor, etc.*, 68 id. 23 ; *Ford* v. *Mayor, etc.*, 63 id. 940 ; *Supervisors* v. *Bates*, 17 id. 242–246 ; *Delafield*, v. *State of Ill.*, 2 Hill, 159–174.)

ANDREWS, J. This seems to be a reasonably plain case. The question is whether the commissioners of common lands in the town of Gravesend, in granting to plaintiff on March 1, 1880, a renewal of the lease of lots twenty-four and twenty-seven of the common lands of the town, for a term of ten years from November 12, 1882, the date of the expiration of the term of the lease under which she then held the premises, were acting within their authority. The determination of the question depends upon the construction of two resolutions passed by the electors of the town, in town meeting assembled,

one April 4, 1871, and the other April 2, 1878. The only authority possessed by the commissioners was conferred by those resolutions. The precise point in controversy is whether the commissioners were authorized to renew an existing lease for a term to commence on the expiration of the prior lease, before the commencement of the last year of the unexpired lease.

The resolution of April 4, 1871, so far as it is material here, is as follows: "*Resolved*, That the common lands of the town of Gravesend, on Coney Island, shall hereafter be let only at public auction on the premises to be let, or at the town house in this town, to the highest bidder, in parcels of not more than three hundred feet front each (except Coney Island Point, which may be let in one parcel as at present) on notice specifying the time and place of letting, and describing the premises to be let, which said notice shall be published in the Brooklyn Daily Eagle and Union each, once in each week, for four weeks immediately prior to such letting. No lot shall be let at a time more than one year prior to the expiration of any existing lease thereon, and no lot let for a longer period than ten years." The language quoted, is followed by a provision for compensation for improvements, to be made by the incoming to the outgoing tenant, when any lot previously under lease, is let to a person other than the former lessee, as to which provision, no question arises in this case. The resolution of April 2, 1878, is as follows: "*Resolved*, That the resolution in relation to leasing common lands in the town of Gravesend, passed at a town meeting held in the town of Gravesend, April 4, 1871, be amended by adding thereto the following: 'The commissioners of common lands are also authorized to renew any existing lease or leases of common lands belonging to said town of Gravesend, upon terms as they may deem most advantageous for said town.'"

It is claimed on the part of the appellant that the resolution of April 2, 1878, conferred authority on the commissioners to renew leases, without limitation as to the time when the power should be exercised, and that this power was not sub-

ject to the restriction contained in the resolution of April 4, 1871, that "no lot shall be let at a time more than one year prior to the expiration of any existing lease thereon." We cannot assent to this construction of the resolution of 1878. Under the resolution of 1871, no lease could be granted except upon competitive bidding at public auction. The commissioners had no power to renew existing leases. In all cases the right to a lease of any town lands, whether held under an existing lease or not, vested in the highest bidder at the public letting. The prior lessee acquired no preference, and he could demand a new lease only in the character of purchaser of the right at the public sale. Unless he was the highest bidder, his interest terminated with his existing lease, subject only to the right to compensation for improvements, as provided in the resolution. It is quite manifest that under the resolution of 1871, a lessee who had made valuable improvements during his term, or had built up a valuable business in connection with the premises, might at a re-letting at public auction be placed at a disadvantage. The town authorities also were deprived of any discretion, and although, in view of the circumstances, they might think it for the best interest of the town to continue the existing tenancy, they could not elect to do so, nor could they give any effect to equitable considerations. It was, we think, the object of the resolution of 1878, to relax the stringent rule prescribed in the resolution of 1871, as applied to common lands held under lease, by taking them out of the general rule requiring a public letting, and permitting the commissioners to renew existing leases upon such terms as might be agreed upon between themselves and the tenants in possession. But the resolution of 1878 in no other respect interfered with the scheme of the resolution of 1871. It left unaffected the provision in the resolution of 1871, that "no lot shall be let at a time more than one year prior to the expiration of any existing lease thereon, and no lot for a longer period than ten years." It is obvious that these restrictions were imposed in view of the contingency of an

advance in the value of the town property on Coney Island, and to secure to the town an adequate rental. The amendment of 1878, did not abrogate these restrictions. They, in fact, served a more important purpose than before, and operated as a check upon fraudulent and collusive proceedings on the part of the town commissioners. These restrictions, moreover, did not have their origin in the resolution of 1871. They are found in the resolution of 1866, passed before the system of public lettings was adopted, and the resolution of 1878, which restored to the commissioners the power to renew leases which they possessed under the resolution of 1866, contains no indication that it was the intention to depart from the policy established in 1866, and continued by the resolution of 1871, as to the time within which the power to make renewals should be exercised. The general rules of construction sustain, we think, the construction put by the courts below upon the resolution of 1878, and it follows that the judgment declaring the lease in question to be void, should be affirmed.

All concur.

Judgment affirmed.