GREEN, J.
The plaintiffs claim to be the owners of the dock, and entitled to the possession of the same, through divers conveyances to them of the interest of Louis Harbrecht and Louis Allgewahr, who, as is claimed by the plaintiffs, were the original owners-of the dock. The defendant company claims to be entitled to use the dock by virtue of a permit from Louis Harbrecht, that Louis Harbrecht alone was the original owner of the dock, and that the-plaintiffs have no title to the same. May 4,1888, the state of New York, through its superintendent of public works, issued a license to the International Yacht Club, the Atlantic Club, and the Audubon Fishing Club, of Buffalo, to construct a dock over a portion of Bird Island pier, near the foot of Ferry street, in the city of Buffalo, upon lands owned by the state, with the reservation of the right to annul the license at any time, and compel the removal of the dock by the Slubs. These clubs were unincorporated associations, formed, owned, controlled and managed by one Louis Harbrecht, and had no existence beyond Harbrecht himself. Subsequently to the issuing of this license a dock was built under this-permit. Harbrecht claims that he built, and became and still is-the sole owner of the dock thus constructed. Louis Allgewahr, the father-in-law of Harbrecht, was, at the time of the construction of the dock, a co-partner of, and engaged in business at the city of Buffalo with, Harbrecht. He testifies that the dock was built by the firm of Harbrecht & Go., which consisted of Louis Harbrecht- and Louis Allgewahr, and that each owned an equal, undivided one-half interest in the dock. It is admitted that such a firm was-in existence at the time of the erection of this structure. Harbrecht himself admits that such co-partnership was in existence at. that time, but testifies that such,co-partnership did not extend to-this dock, and that Allgewahr never obtained any interest in that-dock. The referee finds upon this question as follows: “ Said Louis Harbrecht built the dock on the lands in question.” The-referee does not find, in express terms, that Louis Allgewahr had no interest or title to such dock. The referee, however, finds that, subsequently to the building of the said dock, there was a transfer by Louis Allgewahr to the wife of Harbrecht of an undivided one-half interest in said dock, and that subsequently thereto the wife of Louis Harbrecht transferred and conveyed the same undivided one-half interest in the dock to the plaintiff Daniel E. Bailey; that this last instrument was given to secure the payment of the moneys agreed to be paid by a certain contract between -Louis Harbrecht and Daniel E. Bailey. In that instrument, so executed by LouiseHarbrecht, the interest conveyed in the dock is described as-follows:
*835 “ One equal, undivided half of the dock on Bird Island pierj south of Ferry street, built by the firm of Harbrecht & Company; being all of the one-half right, title, interest, and ownership the said Louise Harbrecht now has, or ever had, in and to the said dock.”
It appears from these instruments that Louis Harbrecht must have known that Louis Allgewahr had an interest in that property, and that it was treated in those instruments as the dock built by Harbrecht & Co. There is further evidence tending to show that during the time of the ownership of one-half of this dock by Louise Harbrecht, Louis Harbrecht collected rents therefor, and acted as the agent for his wife in respect to her interest in that dock. There is no claim that she ever had any interest in the same, except as she derived it from Louis Allgewahr. The referee further finds that on the 21st day of March, 1892, Louis Allgewahr sold and conveyed all his interest in the dock to the Buffalo & Grand Island Excursion Company and Arthur W. Hickman. This company is a co-partnership consisting of all the plaintiff except Ziegele and Bailey. He further finds that the grantees in that instrument paid for the interest of Louis Allgewahr in the same the sum of $1,500. Hickman afterwards transferred his interest in the same to the plaintiff Ziegele. Notwithstanding Louis Harbrecht and his wife, Louise, both testify that the wife never had any interest in that dock, the referee finds that Louis Harbrecht executed and delivered an instaument in writing purporting to convey an undivided one-half interest in the dock to Louis Allgewahr, and that Louis Allgewahr executed and delivered an instrument in writing purporting to convey the same undivided one-half interest in said dock to Louise Harbrecht. The referee further finds that the interest thus conveyed to Louise Harbrecht was by her sold and transferred to the plaintiff Bailey to secure the payment of moneys agreed to be paid by Louis Harbrecht to the plaintiff Bailey. Evidence was given showing conclusively that, at the time of the execution of this last instrument, Louis Harbrecht and his wife were both present, and knew of the execution and delivery of the same. The evidence amply sustains the finding of the referee that such an instrument was executed. The instrument itself shows upon its face that the dock was thus transferred by Louise Harbrecht in the interest of, and for the benefit of, her husband, was the dock built by the firm of Harbrecht & Go. This instrument alone is sufficient evidence of the interest of Allgewahr in that dock at the time of its construction. The findings of the referee are sufficient to establish that fact. And his findings in that respect are fully supported by the evidence of the witnesses and the written instruments produced upon that trial. A careful examination of this evidence fully satisfies me that Louis Harbrecht and Louis Allgewahr constructed that dock, that it was a joint enterprise, and that they were equally interested in the same at the time of its completion. The evidence shows conclusively that thereafter Louis Harbrecht transferred his undivided one-half interest therein to his father-in-law, Louis All-gewahr, and that Allgewahr thereafter transferred the same inter *836 est to his daughter, Louise Harbrecht, the wife of Louis Harbrecht. If this be true, then the plaintiffs are the owners of that dock, subject to the right of the state to compel the removal thereof. The referee, however, has found that “The only title which the plaintiffs have, if any, in and to said dock, is through or from the said Louis Harbrecht.” And he finds, as conclusions of law, that “ the plaintiffs have acquired no interest in the said dock,” and that plaintiffs' complaint should be dismissed. These findings are inconsistent with the other findings upon the subject of the title and interest of the plaintiffs to the dock, and are against the weight of evidence. The referee, in arriving at his conclusions, must have labored under an erroneous impression that, as a license had been granted by the state of New York to Louis Harbrecht for the erection of a dock upon the lands of the state, Harbrecht therefore had no right or title to the dock which had been erected upon lands of the state which he could transfer and deliver to another. That the referee must have had that in mind appears from his twelfth finding of fact, wherein he finds “ that the state of New York has never revoked the said license, nor has it ever given the said Louis Harbrecht authority to sell, assign, or transfer the same, but said license still remains in full force and virtue.” The decision of the referee must have been based largely upon that finding, for on no other hypothesis could his decision be sustained. The evidence certainly falls far short of sustaining the proposition that the plaintiffs are not the owners of this property in question. The testimony of the witnesses, and all the written evidence, point conclusively to the fact that the plaintiffs have shown title in themselves to, and the right to the possession of, the dock. If the referee has based his decision upon the finding of fact that, because the state of New York has never revoked the license, or given Louis Harbrecht authority to sell, assign, or transfer the same, and because that license still remains in full force and virtue, therefore the title and the right of possession to that dock could not be transferred to these plaintiffs, then the decision must be reversed bechuse his conclusion of law therefrom is erroneous. Neither an assignment of the license itself, nor a sale or lease of the property constituting the dock, is prohibited by the statute. And since the right to compel the removal of the dock, upon revocation of the license, was reserved to the state, it would seem that the licensee would have the right to remove it as his personal property. However this may be, he had a beneficial interest in the materials constituting the dock, which was a proper subject of sale or assignment,' and would vest in the assignee all the property interests possessed by the assignor, subject to any claim the state might see fit to make. The transfer of the possessory interests of the-licensee was valid against every one except the state.
If Harbrecht had demised the dock for a term of years, the lessee would be estopped from questioning the power or right of the lessor to grant the lease. In Tilyou v. Reynolds, 108 N. Y. 558; 13 St. Rep. 853, the plaintiff held certain lands in the town" of Gravesend, under a lease from the commissioners, and- *837 demised them, to the defendant; and it was held that the lessee was estopped from setting up in defense to a claim for rent that the lease to the plaintiff was executed in yiolation of a statutory provision, and had been adjudged void in Tilyou v. Town of Gravesend, 104 N. Y. 356; 5 St. Rep. 725. In Mattoon v. Munroe; 21 Hun, 74, the plaintiff held a license from the canal commissioners for the construction of dry docks on public lands, and executed a lease thereof to the defendants for a term of years; and the lessees were held liable for the rent, even after revocation of the plaintiff’s license and the issuing of a license to themselves. It is true that the right or power of the plaintiff to grant the lease was not questioned, but it is evident from the opinion that such an objection would not have been entertained if it had been raised, particularly in view of the fact mentioned, that the plaintiff had a beneficial interest in the erections, upon which he had expended a large sum of money. In Mayor, etc., v. Huntington, 114 N. Y. 631; 23 St. Rep. 912, the court said that the defendant, having taken possession of the property, and entered upon the enjoyment of the right to collect wharfage, solely by virtue of the contract made with him by the department of. docks, cannot now be permitted to question the agreement under which he has elected to take the benefits accruing to him as purchaser; that he must be held to be estopped from contesting the validity of the contract under which he has acquired possession of leased property. It is well settled by authority that a lessee is estopped from questioning the title of his lessor, or the validity of the instrument by which he has acquired possession, of the leased property. There is a manifest distinction between cases arising under contracts which are contrary to public policy, or mala in se or mala prohibita, and those which are claimed to be ultra vires. See Woodruff v. Railway Co., 93 N. Y. 618. All estoppels, however, must be reciprocal and mutual; for, as the whole estate is created by estoppel, both parties must be bound, or neither. Tayl. Landl. & Ten. § 90; Canal Co. v. Hathaway, 8 Wend. 484. And an agreement for quiet enjoyment is to be implied from the terms of the lease. Vernam v. Smith, 15 N. Y. 327; Mayor, etc. v. Mabie, 13 id. 153. If, therefore, the instrument executed were a lease, and not an assignment, the lessor, Harbrecht, would be estopped from questioning its validity or denying his right or power to make it. Here, however, the licensee has made all assignment of his rights and interests acquired by or under the license, and the question is whether he is not precluded from denying his right or power to make it. It is difficult to perceive any distinction, in principle, between the case of a lease for a term of years, and an absolute assignment of the license itself, .and the rights of property acquired under it. If we assume that the principles governing the relations of landlord and tenant are not applicable to this case, then, upon the general principles of equity relating to the respective rights and liabilities of parties arising out of contracts between them, which have been partially or wholly performed by either party, they are respectively precluded from raising, on *838 behalf of the state, any questions as to the right'or power of the other to make such contract of assignment. See Woodruff v. Railway Co., 93 N. Y. 618, supra. As a general rule, a party will be concluded from denying his own acts or admissions which were expressly designed to influence the conduct of another, and did so influence it, and when such design will operate to the injury of the latter. Good conscience and honest dealing forbid that he should be permitted to gainsay them. Canal Co. v. Hathaway, 8 Wend. 483. The licensees, or those claiming under them, cannot appear here as the representatives of the state, and demand a judicial annulment of the assignment. Only the state, or its proper officers, can bring it in question, for they alone are interested. In Mattoon v. Munroe, supra, the instrument was in the form of a lease; but it is doubtful if that was its legal character, since the lessor possessed no interest in the lands, but simply a license to use them for the purposes specified. Really it was nothing -but an assignment of the license and docks for a term of years, subject to revocation by the state. The United States statutes provide that all assignments and transfers of the right of pre-emption prior to issue of a patent shall be void. A question of forfeiture under such a statute can only be raised by the United States. Larison v. Wilbur (N. D.) 47 N. W. 381. Nor is this requirement to be construed to prevent any pre-emptor from making a valid assignment of his possessory right; that is, while one cannot, before the completion of his title, assign his right of preemption so as to give another the right to demand a patent, yet he may enter into an agreement to abandon the land he occupies, so that another may enter upon it and initiate a right of pre-emption for himself. O’Hanlon v. Denvir, 81 Cal. 63; Pelham v. Service (Kan.) 26 Pac. 29; Olson v. Orton, 28 Minn. 36; Myers v. Croft, 13 Wall. 291. “ These possessory rights and improvements placed on the soil were, by the policy of the government, generally protected, so far, at least, as to give priority of the right to purchase when thze land was offered for sale. They [these rights] were the subjects of bargain and sale, and, as among the parties to such contracts, were valid.” Lamb v. Davenport, 18 Wall. 307. So, where a pre-emptor had mortgaged the property, and then transferred it to one who assumed the payment of the mortgage, it was held that, although the mortgage was void under the laws of congress, yet the grantee was estopped from showing that it was void. Green v. Houston, 22 Kan. 35. See, also, Brewster v. Madden, 15 Kan. 249; Drury v. Improvement Co., 13 Allen, 168. In Blakslee Manuf’g Co. v. Blakslee’s Sons Iron Works, 129 N. Y. 156; 41 St. Rep. 178, it was held that, although the statute declares the grant of lands under water to any person other than the owner of the upland to be void, its validity can be questioned only in a direct proceeding to review the action of the commissioners, or by action in equity to vacate the patent, where it affirmatively purports to have been executed to the owner of the upland. See, also, N. Y. C. & H. R. Railroad Co. v. Aldridge, 135 N. Y. 83; 48 St. Rep. 373. And' that a title acquired by a foreign corporation in violation of a statute is valid against every *839 one but the state, see Lancaster v. Improvement Co. (N. Y. App.) 24 Lawy. Rep. Ann. 330, note, 35 N. E. 964.
For the foregoing reasons, and upon the principles stated, the court is of the opinion that the plaintiffs have acquired and possess,'' as against the defendants, all the rights and interests of Harbrecht in and to the dock in question, “ subject to the control of the superintendent of public works.” 1 Rev. St. (8th ed.) p. 772, § 177. But it does not follow that, because an individual owns a wharf, he also has a right to the exclusive enjoyment of it; for he may at the same time be obliged to allow others to use it, upon the payment to him of a reasonable compensation as wharfage. Dutton v. Strong, 1 Black, 23. And see 19 Am. & Eng. Enc. Law, tit. “ Wharfs.” No question has been raised as to the right of the defendants to use the dock in controversy upon payment of a reasonable compensation; and we do not deem it necessary for the decision of this case to determine the duty or obligation of the owner of the dock, or the rights of the defendants, or other owners of vessels navigating the public waters of the state. The defendants claim the right to use this dock by virtue of a license or permission from Harbrecht, and they should be enjoined only from claiming or asserting any such right, and from using said dock, or landing their boats at said dock, under such alleged right.
The judgment herein should be reversed, and a new trial ordered, with costs to abide the event of the action.
HARDIN, P. J., and FOLLETT and ADAMS, JJ., concur; WARD, J., not voting.