OLIVIA M. CLIFFORD, Respondent, v. ROBERT O'NEILL, Appellant.

*License — its qualities — license given by the State to a person to build a dock — permission by the State to moor a dry dock there — it is not a revocation of the license — the original licensee may recover rent — nature of the right to wharfage.*

The Board of Canal Commissioners of the State of New York granted to a person a license to construct and maintain docks in the Erie basin in the city of Buffalo, reserving to itself the right to enter upon the premises in order to make repairs, or to enter wholly into possession of the same whenever deemed necessary in the interests of the State or for commercial purposes.

Subsequently the Superintendent of Public Works, who had succeeded to the powers of the Board of Canal Commissioners in, the premises, permitted another person to occupy, as a place to moor floating dry docks, a portion of the channel on the side of such docks of the original licensee, to whom no notice of revocation of the original license was given.

*Held,* that the granting of such permission by the Superintendent of Public Works did not amount to a revocation of the original license;

That the original licensee was entitled to recover rent for the space occupied under such permission by the floating dry docks — such right resting, not upon the conventional relation of landlord and tenant, but being given by way of "compensation to persons who, under the authority of law, have constructed piers and wharfs, to remunerate them for the outlay" thus made.

The nature of a license to one to do an act upon another's land, considered.

Appeal by the defendant, Robert O'Neill, from a judgment of the Superior Court of the city of Buffalo in favor of the plaintiff, entered in the office of the clerk of said court on the 27th day of December, 1895, upon the decision of the court rendered after a trial before the court without a jury.

This action was brought to recover wharfage from January 1, 1889, to January 1, 1895, for the use and occupation by the defendant of the plaintiff's docks or wharves constructed in the Erie basin in the city of Buffalo, the same having been used for the purpose of mooring thereto two floating dry docks belonging to the defendant.

The defendant in his answer admits that he kept his floating dry docks moored alongside of the docks in question, and that he has paid the plaintiff nothing therefor, but he denies the ownership of the docks by the plaintiff, and alleges occupation and use thereof by himself in virtue of permission given to him by the State.

The evidence discloses that, in 1867, the Canal Commissioners of this State, by a formal resolution entered upon the minutes of the board, granted to one Isaac Holloway the right to construct and maintain, at his own cost and expense, the docks in question; that thereafter and on April 14, 1868, additional privileges were, by such board, conferred upon Holloway and one Bennett, who was the owner of an adjacent wharf which had been constructed upon like authority.

The privilege thus granted was subsequently transferred by Isaac Holloway to one John C. Clifford, who thereafter proceeded to construct the docks or wharves mentioned in the complaint, but before the same were completed, sold and assigned his interest therein, as well as in whatever grant or permit had been obtained from the State, to the plaintiff, his wife, and she thereupon finished the structures at a cost of about $40,000.

Thereafter, and on the 23d of October, 1885, the plaintiff executed and delivered to John C. Sullivan and Thomas J. Nunan a written lease of one of the docks thus constructed for a term of five years from the first day of November following, at the annual rental of $200; and in pursuance of such lease Sullivan and Nunan entered upon the demised premises and built ice houses thereon, which they occupied and paid rent for until November, 1891, when the ice houses were burned.

In the year 1890, the Superintendent of Public Works of the State of New York gave his permission to the defendant to occupy a portion of the channel on the northerly side of the plaintiff's southerly dock and alongside of such dock with a floating dry dock, and, in consequence of such permisssion, the defendant constructed a floating dry dock which he moored temporarily on the southerly side of the plaintiff's dock while he was engaged in dredging the channel on the northerly side thereof. In the year 1893, the defendant constructed and moored on the northerly side of the plaintiff's dock another and a larger dry dock; and while such dry docks lay so moored, he made use of a portion of the plaintiff's southerly dock for the purposes of a dry dock, and, at times, for building canal boats.

Shortly after the defendant began to thus use and occupy the plaintiff's dock he was informed of the plaintiff's ownership of the same, and that the latter would expect to receive pay for such use and occupation.

*John W. Ingram,* for the appellant.

*H. D. Fitzgerald,* for the respondent.

ADAMS, J. :

This court has had occasion very recently to consider and determine several of the questions presented upon this appeal, and in so doing has reviewed with great care and observation nearly all of the authorities cited by counsel in support of their respective contentions. (*Ziegele* v. *Richelieu & Ontario Nav. Co.,* 3 App. Div. 77.) It will be unnecessary, for this reason, to go over much of the ground traversed in the elaborate briefs which have been submitted for our perusal and study, or to do more than reiterate certain propositions — at least such of them as may be applicable to the case in hand, which we regard as established by the decision to which reference has just been made.

Briefly epitomizing, therefore, it may be said that the right which was conferred upon Isaac Holloway by the action of the Canal Commissioners in 1867 was a possessory right, and one which may be regarded as in the nature of a license. It was, moreover, one which, although revocable at the pleasure of the board which conferred it,

was assignable, certainly, as against every one but the State. This being the case, it necessarily follows that the plaintiff's right as against the defendant to maintain and occupy the docks or structures erected by her at a great expense, cannot be questioned, unless it appears that the same has been revoked by the power which granted that right; and, consequently, we come to the consideration of the sole question of importance arising in the case, which has not already been adjudicated by this court, and that is the question of revocation.

In entering upon an investigation of this subject we observe that no claim is made that any actual notice of revocation was ever served upon the plaintiff or her assignor, but, upon the contrary, it is conceded that nothing of the kind was done. It is insisted, however, that the privilege granted by the Superintendent of Public Works to the defendant, being inconsistent with the plaintiff's right to occcupy and control the docks, was sufficient, of itself, to work a revocation of all former rights and privileges conferred upon her or her assignor, and, unless this position can be maintained, there is really no defense to the action.

Assuming that the defendant is in a position to raise this question, as against the plaintiff — concerning which no opinion is expressed — we, nevertheless, find ourselves unable to yield assent to the proposition just stated, although we fully recognize the existence of certain general principles which the defendant invokes in aid of his contention. To illustrate, it may be conceded that a license is merely a permission to do an act which, without such permission, would amount to a trespass, and that such permission, when related to real estate, is not equivalent to an easement, nor will the continuous enjoyment of the privilege conferred, for any period of time, cause it to ripen into a tangible interest in the land affected. Moreover, it is now well settled in this State that a parol license to do an act upon the land of the licensor is revocable at the option of the licensor, even though it may have been his intention to confer a continuing right and money is expended by the licensee upon the faith of the license. (*Cronkhite* v. *Cronkhite*, 94 N. Y. 323; *Crosdale* v. *Lanigan*, 129 id. 604.)

But the difficulty which the defendant's proposition encounters is that the evidence in the case fails to establish all that he claims for it. This suggestion will, perhaps, carry greater weight if some por-

tions of the evidence contained in the record are briefly reviewed, in doing which it is proper to bear in mind that the license or privilege conferred upon the plaintiff was the result of official action upon the part of one of the political departments of the State, and that such action was entered in the records of that department.

We discover by reference to these records that in granting such privilege the Board of Canal Commissioners reserved " the right to enter upon the premises above granted for the purpose of making repairs or to enter wholly into possession of the same, whenever the Canal Commissioners in charge thereof shall deem it for the interest of the State, or desire the use of the same for general commercial purposes, or by reason of the failure of the grantee to proceed with and to make the improvements herein contemplated within a reasonable time."

There is, of course, no question but that the contemplated improvements were made within a reasonable time after this action was taken by the commissioners; nor is it contended that they entered upon the premises for the purpose of making repairs or because the premises were desired for general commercial purposes; but, as we understand it, the defendant's claim amounts practically to this, that the uncontradicted evidence in the case shows that in the year 1890, the Superintendent of Public Works of the State of New York permitted him to occupy a portion of the channel on the northerly side of the plaintiff's southerly dock, with a floating dry dock which he first caused to be moored alongside of the northerly side of the plaintiff's dock; and that subsequently, and in the year 1893, he constructed another dry dock, which he also caused to be moored upon the northerly side of the plaintiff's dock; and that the dry docks thus constructed by the defendant afforded to persons navigating the Erie canal a means for building and repairing boats used in navigating that stream, and were the only floating dry docks in the city of Buffalo available for that purpose. These facts were all found by the trial court, but they were regarded as insufficient so constitute a revocation of the plaintiff's license, for the obvious reason that in granting the privileges above enumerated to the defendant, the Superintendent of Public Works, who, by the Constitution of 1877, succeeded to the powers and duties of the Canal Commissioners, did not avail himself of the right reserved by the

resolutions creating the license under which the plaintiff claims, of entering wholly into possession of the premises in question, or into any part thereof, for any of the purposes specified therein.

We are of the opinion that the conclusion thus reached by the learned trial court cannot be successfully assailed, and that, inasmuch as the plaintiff's license was created by formal, official action, it cannot be regarded as revoked without some equally formal proceeding upon the part of the authorities creating the same, or at least some action which may be regarded as equivalent to a reassertion by the superintendent of his right to enter into possession of, and to exercise absolute control over, the premises in question. This, the records of his office show, he has not assumed to do. On the contrary, it appears that the plaintiff has remained in control of her docks and wharves, and has been in receipt of rent for the use of the same from various parties down to the time this action was commenced. In the case of *Mattoon* v. *Monroe* (21 Hun, 74) it was made to appear that the Canal Commissioners, having granted a privilege similar to the one we are considering, and desiring to revoke the same, adopted a formal resolution to that effect; and this was regarded by the court as the proper method to accomplish a revocation, although in that case it was held ineffectual for that purpose, by reason of the fact that such attempted revocation was procured by collusive means.

The necessary deduction from the views which are here expressed is that the plaintiff, being rightfully in possession of the docks in question in virtue of an unrevoked license from the Canal Commissioners, was entitled to demand from a person using the same such rental value therefor as might be agreed upon, or as such use was reasonably worth, even though the party using them rested his right so to do upon some authority which the Superintendent of Public Works had attempted to confer.

The right to demand and receive wharfage does not necessarily rest upon the existence of the conventional relation of landlord and tenant, as is contended by the learned counsel for the respondent, but it is a right which is given by way of " compensation to persons who, under the authority of law, have constructed piers and wharves, and to remunerate them for the outlay made for the convenience and safety of vessels, and the benefit conferred thereby upon com-

merce and navigation." (See opinion of ANDREWS, J., in *Walsh* v. *N. Y. Floating Dry Dock Co.*, 77 N. Y. 448–452, and cases cited in such opinion.)

In this case it is conceded that the defendant used the docks; that he was notified by the plaintiff's husband that he would be expected to pay rent therefor, and the evidence fully sustains the finding that such use was reasonably worth the sum specified therein. We think, therefore, that the judgment appealed from should be affirmed.

All concurred.

Judgment affirmed, with costs.