OPINION OF THE COURT
Robert L. Estes, J.
The Commissioner of Transportation, as agent of the People of the State of New York, has commenced a proceeding in this court requesting an order summarily removing the respon *321 dent, Gilbert Lane, from lands comprising a portion of a public highway right-of-way known as New York State Route 23, in the Town of Kortright, Delaware County, New York. The proceeding is pursuant to RPAPL 713 (3), which permits a party to maintain a special proceeding for summary eviction after service of a 10-day notice to quit, in cases where the respondent or the person to whom he has succeeded "has intruded into or squatted upon the property without the permission of the person entitled to possession and the occupancy has continued without permission or permission has been revoked and notice of the revocation given to the person to be removed.”
After denying a motion by the petitioner for summary judgment, the court convened a hearing. The petitioner adduced testimony from Ronald C. Edwards, a transportation maintenance engineer for the Department of Transportation, and from John Westcott, a senior investigator for the New York State Attorney-General’s office. The respondent did not testify. On the court’s own motion in the interests of justice, the court took judicial notice of a record maintained by the Delaware County Clerk, indicating that a license was granted by the County Clerk to Mr. Lane under section 32 of the General Business Law on August 31, 1983.
From the evidence, the court finds that since late July of 1989, Mr. Lane has brought to a pull-off area on New York State Route 23, numerous items of personal property, which he there offers for sale. The items include used vehicles, tires, farm implements, wagons, old furniture, assorted collectibles, motorcycle parts, lamps, and wood-burning stoves. It is clear from the description of such items as "wares” in the testimony and from the fact that one of the witnesses expressed an interest in considering purchase of one of the wood stoves, that the items are maintained there for purposes of sale, not for Mr. Lane’s personal use. Indeed, Mr. Westcott’s notebook entry of August 6, 1989 states that he saw on that date a full display of "merchandise.” The open array of goods is visible in the photographs received in evidence. There is also a used bus on the property, maintained by the respondent as an office for the conduct of his business. Mr. Lane admitted to Mr. Westcott that he had not been moving at night, but can, because "everything is on wheels,” according to a note by Mr. Westcott dated August 9, 1989. On August 3, 1989 Mr. Westcott noted the presence of three wagons and a Volkswagen bus.
Mr. Lane was served by Mr. Westcott on May 16, 1990, with *322 a 10-day notice to quit, but has not removed from the premises the items which he maintains there for sale. Specific permission from the Department of Transportation to maintain items for sale on the premises has not been obtained by Mr. Lane. The site is described by Mr. Edwards as being intended for the storage of construction materials such as stone or as a "pull-off” for cars of the motoring public. There is no evidence that the premises include any structure or other improvements for use by the public, or that Mr. Lane’s activity interferes with the traveled way or the motoring public.
As an honorably discharged veteran having procured the necessary county license, Mr. Lane has a right granted by the Legislature, to engage in certain activities, including "the right to hawk, peddle, vend and sell goods, wares and merchandise or solicit trade” upon the streets and highways within the County of Delaware. (General Business Law § 32 [1].) In Matter of Woodin v Lane (119 AD2d 969, 971), the right was described as a personal privilege.
The petitioner cites Matter of Commissioner of Transp. v Lane (144 Misc 2d 680) for the proposition that eviction was held to be appropriate under almost identical circumstances. The parties were identical. Mr. Lane’s activities were virtually identical, except they occurred in that case within an incorporated village. A motion by the petitioner for summary judgment in that special proceeding under RPAPL 713 (3) was granted, requiring Mr. Lane’s eviction.
The court determined the motion after finding that Mr. Lane had not "put forth any factual basis for his claims of permissive entry or permissive use except the assertion of his attorney that [Mr. Lane] entered with the lawful right which all citizens have to enter upon the public highway.” (Supra, at 683.)
That court also confined its analysis of Mr. Lane’s activity by analyzing the terms "hawker” and "peddler” as related to Mr. Lane’s activity, without considering that the statute also grants a right to "vend” and to "sell.”* The court also noted *323 that even if one should assume for the sake of argument that the initial entry was lawful and by permission, the unrebutted evidence from the petitioner established that the petitioner had given both written and oral notice that whatever permission Lane had to occupy the premises had been revoked.
This court respectfully disagrees with that court’s analysis, as the petitioner would have the court apply it to this case.
As is evident from his oral responses endorsed upon the petition by the court pursuant to RPAPL 743, Mr. Lane does not confine his claim of permissive entry in this case, to a claim that he has a right to be present as a member of the motoring public. He claims justification for his presence under section 32 of the General Business Law. While it is true that his business is not that of a hawker or peddler because it is not itinerant in nature (Village of Stamford v Fisher, 140 NY 187), the statute also permits licensed individuals to vend and sell their own property on the public highways of the State.
"Vend” is defined by Webster’s II New Riverside University Dictionary (1984) as a transitive verb, as "1. to sell. 2. to offer (eg, an idea) for public consideration”; and as an intransitive verb as "la. To sell goods, b. To sell by means of a vending machine. 2. To have a market.” The word "sell” includes the meanings as a transitive verb of "1. To exchange or give up for money or its equivalent. 2. To offer for sale. 3. To surrender or give up in exchange for a price or reward. 4. To promote the sale of [a new ad campaign really sold that product.]” and as an intransitive verb, "1. To exchange owner *324 ship for money or its equivalent. 2. To be sold or be on sale. 3. To attract prospective buyers [an item that sells well]”.
As used in the statute, neither the term "vend” nor the term "sell” is limited in scope to vending or selling by means of hawking or peddling. Had the Legislature intended such a limited meaning, it would probably have omitted the terms "vend” and "sell,” having fully expressed its meaning in the preceding words "hawk” and "peddle.” Since the terms "vend” and "sell” have different, less restrictive meanings from "hawk” and "peddle,” this court is of the opinion that the Legislature intended to encompass vending and selling by means not restricted to hawking and peddling.
If there is nothing to indicate a contrary intention on the part of the lawmaker, terms of general import in a statute ordinarily are to receive their full significance. (McKinney’s Cons Laws of NY, Book 1, Statutes § 114.)
The statute does not limit the manner in which the vending or selling is to take place. It does not require that the sales be from a portable stand, pushcart, or other appliance. Nor does it require the removal of goods periodically from the place of sale, or that the goods at least be stored overnight.
Continuous display of goods is not prohibited, and is qualitatively little different from displaying goods during daylight hours and packing away or removing them at night.
The statute does not distinguish between offering goods from a pushcart constantly in motion; offering them from a parked wagon kept on premises but packed up and closed at night; offering them from a flatbed or box trailer or other vehicle hauled into the same premises daily and taken away at night; or offering them from a continuous, open display.
The Legislature has determined to create a privileged use of public streets and highways for certain honorably discharged members of the Armed Forces of the United States who are war veterans or have served overseas, without enacting particular restrictions limiting the manner or style of exercising the privilege. The court should not legislate such restrictions, and should leave it to the Legislature to clarify its intention, should it deem clarification to be necessary.
There is no evidence that Mr. Lane has constructed any structure or other improvement upon the premises, nor otherwise claimed a right to use the premises for any purpose other than vending and selling his wares. The petitioner makes no claim that Mr. Lane’s use presents any danger to traffic, or *325 that it violates any statute regulating use of the highway. (See, for example, People v Mann, 113 Misc 2d 980 [holding that a veteran licensed pursuant to section 32 of the General Business Law is exempt from application of section 1157 (c) of the Vehicle and Traffic Law].)
Although the issue was not fully addressed in Matter of Commissioner of Transp. v Lane (144 Misc 2d 680, supra), it is the opinion of this court that Mr. Lane’s initial entry upon the premises for the purpose of vending and selling his wares from the premises was within the license granted by the Legislature. Notwithstanding the implication to the contrary in that case, it is this court’s opinion that the Commissioner of Transportation is without authority to revoke that license by service of a notice to quit, thereby, in effect, repealing section 32 of the General Business Law as it applies to Mr. Lane.
It is important to note, however, that this proceeding is not one to determine generally whether Mr. Lane has a right to remain and continue to conduct his business on the premises, an issue which this court is not called upon to determine. The single narrow issue before the court is whether Mr. Lane is a squatter or intruder who may be summarily evicted under RPAPL 713 (3). A summary proceeding being statutory in nature, strict adherence is required in order to give a court jurisdiction. (Woodin v Lane, 119 AD2d 969, supra.)
The principle is well settled, that one is not a squatter whose entry is with permission. An essential element of summary proceedings to remove a squatter is that the occupant sought to be removed intruded into or squatted upon the premises, in the first instance, without permission of the owner, his predecessor in title, or one entitled to possession. (Matter of Robbins v De Lee, 34 AD2d 870, and cases therein cited.) "A squatter is one who settles on the lands of another without any legal authority, and an intruder is one who enters upon property where he has no right, or, as it has been defined, one who, after the death of an ancestor, enters upon land unlawfully, before the heir can enter.” (Williams v Alt, 226 NY 283, 290.)
While one who remains in possession after revocation of a license may be removed in a holdover proceeding, one is not a squatter or intruder where one’s entry is initially authorized by a license. (Caldwell v Mitchell, 158 NYS2d 868.) As generally understood in the law of real property, a licensee is one who enters upon or occupies lands by permission, express or *326 implied, of the owner, or under a personal, revocable, nonassignable privilege from the owner, without possessing any interest in the property, and who becomes a trespasser thereon upon revocation of the permission or privilege. (Rosenstiel v Rosenstiel, 20 AD2d 71, 76.)
Kaswan v Aponte (160 AD2d 324), brought to the court’s attention by the respondent, has no application to the present case. The Kaswan case was limited to a determination of the validity of a certain regulation adopted by the Department of Consumer Affairs of the City of New York, pursuant to authority granted by the City Council, which restricted vendors from vending at particular locations in the City of New York during certain hours.
The petitioner has failed to establish that Mr. Lane’s entry upon the premises was without license or authority, or that his license to carry on activity under section 32 of the General Business Law has been revoked, and so has failed to establish that he is a squatter or intruder. It is evident that Mr. Lane’s entry and use of the premises was and is as a vendor or merchant, activity which he is authorized to engage in by section 32 of the General Business Law because of his status as a veteran bearing the license required by such law. As such, he is not a squatter or intruder, and a special proceeding for summary eviction may not be maintained against him under subdivision (3) of section 713 of the General Business Law.
The petition will be dismissed, accordingly.

 The court reasoned that when the precursor of General Business Law § 32 was enacted, the Legislature had in mind the language employed in Village of Stamford v Fisher (140 NY 187, 191). In the Fisher case, however, the Court of Appeals was considering the language of Laws of 1883 (ch 465), which concerned only the authority of villages to " 'regulate or prevent hawking and peddling in the streets * * * [and] to regulate, restrain or
*323 prohibit sales by auction and grant licenses to peddlers and auctioneers’ (Supra, at 189.) The Court of Appeals had no occasion to construe the word "vend” or the word "sale” in its decision, the sole question being whether the defendant was a peddler. In any event, the statute in question had no relation to vending, nor to selling except by auction.
General Business Law § 32 had its genesis in Laws of 1896 (ch 371, § 1), which provided that certain soldiers, sailors and marines "shall have the right to hawk, peddle and vend any goods, wares or merchandise * * * within this state by procuring a license”. The statute was amended by Laws of 1905 (ch 162, § 1), which expanded the right to include the additional right to "sell by auction,” but limited the activity to that affecting the licensee’s "own goods, wares and merchandise”.
By Laws of 1909 (ch 25), the statute was consolidated with others in the General Business Law.
In 1927, the words "by auction” were omitted, and the words "upon the streets and highways” were added. (L 1927, ch 480, § 1.) In 1938, the restriction requiring that the activity involve the licensee’s own goods was removed, by omitting the words "his own” from the statute. (L 1938, ch 412.)