OPINION OF THE COURT
C. Stephen Hackeling, J.
Undisputed Facts
The undisputed relevant facts presented are that Robert Drost, the petitioner, is the sole deeded title holder of the real property located at 43 Louisa Court, Northport, New York. Until recently, the petitioner resided there with his ex-girlfriend, the respondent, Kim Hookey, for in excess of three years. Prior to moving in together the respondent individually owned and resided in her own separate house. Contemporaneously with the petitioner’s move-in invitation, the respondent transferred a one-half interest in her house to him in consideration of $25,000 which was utilized to cure her mortgage arrears. The petitioner recently moved out of the Louisa Court premises alleging the respondent has a medically related affliction. Said condition has apparently prevented the respondent from appearing in this action other than by counsel.
Issues Presented
May a cohabiting former boyfriend dispossess his girlfriend of three years from real property, titled only in his name, via a summary proceeding pursuant to the provisions of RPAPL 713 (7)?
Secondly, if such a girlfriend sold the boyfriend a one-half interest in a second residence as part of the cohabitation arrangement is she a “licensee,” “tenant at will” or something else?
Discussion Tenant at Will?
The petitioner has proceeded under section 713 (7) of the RPAPL which provides that he may dispossess a licensee after giving a 10-day notice to quit. The respondent girlfriend counters that the 10-day notice to quit is inapplicable as she is not a licensee, but rather a tenant at will, requiring a 30-day notice to quit. (See Real Property Law § 228.)
Despite the frequency that the “cohabiting boyfriend/ girlfriend” issue is presented in this state’s landlord-tenant *212 courts, “the legal status of a paramour with respect to continued occupancy . . . after love’s ardor has cooled” was only first construed via written decision in 1987. (Minors v Tyler, 137 Misc 2d 505, 506 [Civ Ct, Bronx County 1987].) As of this date, no appellate court has directly addressed the paramour licensee issue, although a plethora of lower courts have written divergent opinions on the subject, premised upon First, Second and Fourth Department, Appellate Division, decisions construing the status of a “wife” as a licensee.
The threshold dispositive issue requires the court to address the girlfriend’s argument that her legal status is that of a “tenant at will” (not a licensee) and as such is entitled to the enhanced 30-day notice protections afforded landlord/tenant relationships ascribed under RPAPL 711. (Real Property Law § 228.) Interestingly, the terms “tenant at will” and “licensee” are not defined by statute in New York, and as such the distinction between them is left to the common law. (See Larned v Hudson, 60 NY 102 [1875].) The generic common-law definitions of these two concepts do tend to blur and involve common concepts of temporary permission to occupy premises for an undetermined time period. (See generally Fisher v Queens Park Realty Corp., 41 AD2d 547 [2d Dept 1973].) However, synthesized down to its most basic common denominator, a “tenant at will” recognizes a landlord-tenant relationship and the occupant is granted exclusive possession of a designated space while a “licensee” acknowledges an absence of a landlord-tenant relationship and the occupant receives only unexclusive “use or occupancy” of a premises. (See American Jewish Theatre v Roundabout Theatre Co., 203 AD2d 155, 156 [1st Dept 1994], citing Feder v Caliguira, 8 NY2d 400, 404 [1960]; see also Reynolds v Van Beuren, 155 NY 120 [1898] [dicta]; 49 NY Jur 2d, Easements § 216.)
The factual situation at hand evidences no indication of a landlord-tenant relationship. The girlfriend was granted permission to utilize the entirety of the residence. That grant did not include “exclusive dominion and control over a specifically identified portion of [the] premises” and as such is recognized to constitute a license pursuant to the provisions of section 713 (7). (Federation of Orgs., Inc. v Bauer, 6 Misc 3d 10, 12 [App Term, 9th & 10th Jud Dists 2004]; see also City Enters, v Posemsky, 184 Misc 2d 287 [App Term, 2d & 11th Jud Dists 2000].) In such a situation, the respondent is not a “tenant at will,” and is not entitled to a 30-day notice to quit.
*213 Licensee?
Statutes Change the Common Law
Historically, nonmarried adults who shared the nonexclusive confines of a home and were provided with board maintained the legal status of a “lodger.” (See People v Hyland, 19 Misc 3d 1114[A], 2008 NY Slip Op 50716[U] [Suffolk Dist Ct 2008].) A lodger did not maintain a landlord-tenant relationship as the owner did not surrender dominion over the premises to him. (See Ashton v Margolies, 72 Misc 70 [App Term 1911]; Schreiber v Goldsmith, 35 Misc 45 [App Term 1901]; 1 Dolan, Rasch’s Landlord and Tenant — Summary Proceedings § 4:2, at 173 [4th ed 1998].) Prior to the enactment of RPAPL 711-713’s predecessor statutes (Civ Prac Act §§ 1410-1426), a lodger could not be dispossessed via a summary proceeding which was limited to landlord-tenant relationships. Lodgers could only be formally removed via a common-law “action in ejectment.” (See Benjamin v Benjamin, 5 NY 383 [1851]; Mathews v Mathews, 2 NYS 121 [3d Dept 1888].)
In response to changing times and increased societal demands, the state legislature, in 1920, created a bifurcated statutory scheme within the Civil Practice Act which allowed for the summary dispossession of both landlord-tenant relationship and nonlandlord-tenant relationship (Civ Prac Act, art 83, § 1411) real property occupiers. The legislature expanded the nonlandlord relationships in 1951 to expressly include licensees. (Rosenstiel v Rosenstiel, 20 AD2d 71, 74 [1st Dept 1963], citing L 1951 ch 273.) It is this court’s opinion that the legislature intended the expansion of the summary remedy to be all encompassing and that section 713 (7), and its predecessor statute Civil Practice Act § 1411 (8), was the catchall provision designed to include all non-landlord-tenant occupiers of real property who were not otherwise expressly designated. Such a construction would explain why the statute itself is silent as to any limitations envisioned by the legislature which would change the common-law definition of “licensee.” It is noted that statutes arising after creation of the common law are held to abrogate it only to the extent of the “clear import of the language used” and only to the extent the “statute absolutely requires” (McKinney’s Cons Laws of NY, Book 1, Statutes § 301 [b]; see also Bertles v Nunan, 92 NY 152 [1883]). The statute’s derogation of the common law must be strictly construed. (Dollar Dry Dock Bank v Piping Rock Bldrs., 181 AD2d 709 [2d Dept 1992].) In
*214 order for a statute to change the common law, the legislative intent behind the statute must clearly have the purpose of doing so. (See Dean v Metropolitan El. Ry. Co., 119 NY 540 [1890]; Bose v United Empl. Agencies, Inc., 200 Misc 176 [Mun Ct, Brooklyn 1951].) The Appellate Division, Fourth Department, has adopted this broad common-law definition and has expressly determined that even a “wife” is a licensee capable of being removed from the marital home under an RPAPL 713 (7) proceeding unless a summary eviction would be in derogation of her rights under the Domestic Relations Law. (Halaby v Halaby, 44 AD2d 495 [4th Dept 1974].)
Familial Relationship Exceptions
Premised upon a finding that a girlfriend meets the common-law definition of a licensee, it would be logical to conclude that section 713 (7) is the appropriate summary statutory mechanism to dispossess her. Confusedly, the aforementioned Tyler court and its progeny created a “familial relationship” exception to the common-law definition of licensee, which had broad ramifications in limiting the use of summary proceedings to dispossess persons outside of a landlord-tenant relationship.[1]
This familial relationship exception initially stemmed from the Appellate Division, First Department, decision in Rosenstiel v Rosenstiel (20 AD2d 71 [1963]), which held that a husband cannot by means of summary proceedings evict his wife from the marital home, as long as the marriage relationship is unabridged by a court of competent jurisdiction or by a valid agreement. Rosenstiel relied upon the premise that the legislature intended to exempt wives from the common-law definition as it removed “Spouse Remaining on Premises after Separation or Divorce” from the original proposed bill and as a result of the affirmative enactment of mandated support statutes in the Domestic Relations Law (20 AD2d at 75). The Rosenstiel holding was expanded by New York City courts to cover domestic partners in reliance upon Braschi v Stahl Assoc. Co. (74 NY2d 201 [1989]), which held that a paramour was a “family member” of his partner as envisioned by New York City’s rent control laws, and as such, protected from eviction due to his occupancy
*215 succession rights. Thereafter, this expansive and somewhat subjective definition of family led to an ever evolving class constituting the “familial relationship” licensee exception, which presently includes a girlfriend who had a petitioner’s child, grandchildren, adult children, stepchildren, and inlaws after the death or divorce of a spouse. See Lally v Fasano (23 Misc 3d 938 [Nassau Dist Ct 2009]) for a good historical synopsis.
Family Case-by-Case Review vs. Statutory Opt-Out Objective
Test
Lower courts outside the City of New York somewhat acquiesced to the existence of a “familial relationship” licensee exception but balked at the idea of a “blanket assertion that all family members will be exempt from licensee status.” (Lally v Fasano, 23 Misc 3d 938, 940 [2009].) In an attempt to limit the scope of the licensee exception, a “case-by-case” test was advanced whereby each court must examine whether the family members lived together under one roof, were financially and socially dependent and whether a legal duty of support existed. Utilizing this codependency test, it was held that a domestic partner could evict a former girlfriend who was the mother of his child pursuant to section 713 (7). (See Blake v Stradford, 188 Misc 2d 347 [Nassau Dist Ct 2001].)
While the result of the Lally and Blake holdings appears correct, this court declines to adopt the “case-by-case” codependency test. A close reading of the Second Department’s Rosenstiel precedent reveals a simpler more objective licensee exemption test. Rosenstiel relied upon the premise that the legislature intended to exempt wives from the common-law definition as a result of the affirmative enactment of mandated support and marital distribution statutes contained in the Domestic Relations Law. Similarly, the common thread running through the Court of Appeals Braschi decision is not the common-law definition of family, but rather the statutory protections flowing from New York’s rent-control apartment succession laws. The Appellate Division, Fourth Department, in Halaby (44 AD2d at 499), citing to Tausik v Tausik (11 AD2d 144 [1st Dept 1960], affd 9 NY2d 664 [1961]), also made its section 713 (7) licensee determination premised upon a finding that prior to the initiation of the RPAPL 713 (7) proceeding, the husband’s support obligations had already been determined by the Family Court. Thus, the husband was not circumventing his *216 obligations by using the section 713 (7) summary proceeding. The Court disregarded any arguments that licensee status hinged upon the definition of “family.” In all these instances, the common law was modified via express statutory amendment. It is submitted herein that section 713 (7) includes all common-law licensees except those who can claim an “opt-out” status by virtue of inclusion in a legislative vehicle which grants them greater rights than those of a licensee.[2] Mere “cohabitation without marriage does not give rise to property and financial rights which attend the marital relation.” (Morone v Morone, 50 NY2d 481, 486 [1980].) It is therefore the burden of the respondent paramour to identify her statutory entitlement to opt out of the common-law licensee definition. (See generally Eckles v Sealy, NYLJ, Apr. 17, 2002, at 27, col 6.)
In the instant proceeding, the respondent advances no argument citing to alternative statutory entitlement to greater dispossession protections other than those provided by section 713 (7). As such, she meets the common-law definition of licensee and is subject to a section 713 (7) summary eviction. The court is aware of the respondent’s factual assertion via the argument of counsel that she granted the petitioner a one-half interest in her house, possibly in consideration of her cohabiting with the petitioner. Assuming such a defense was asserted in an answer to the petition, such an arrangement might establish a constructive trust or joint venture/partnership which could be an affirmative defense to a licensee proceeding. (See generally Padilla v Padilla, 164 Misc 2d 740 [Civ Ct, Bronx County 1995], citing Minors v Tyler, supra.) However, the respondent’s failure to appear and testify leaves the court an insufficient record to consider such a defense.
Accordingly, the court finds that the respondent is a section 713 (7) licensee and that she received the appropriate 10-day notice of termination of her license to occupy the premises located at 43 Louisa Court, Northport, New York. The petitioner may submit a judgment of possession and a warrant of eviction, enforcement of which shall be stayed until June 30, 2009.

. A familial relationship exception to the licensee definition would also bar the use of summary proceedings to remove adult children from their elderly parents’ homes. This everyday situation in landlord-tenant court could now only be addressed via a Supreme Court action in ejectment which the Fourth Department Halaby Court described as an inadequate remedy.

. This is consistent with this court’s ruling in Curtis Jackson (50 Cent) v Shaniqua Tompkins (HULT No. 112-08, Apr. 3, 2008), wherein it was determined that the girlfriend respondent was a section 713 (7) licensee as support payments, inclusive of a housing allowance, were current. This statutory “opt-out” test also allows for parents and grandparents to dispossess adult children/family members as licensees via a summary proceeding.