Calkins v Johnson (2024 NY Slip Op 50995(U))

[*1]

Calkins v Johnson

2024 NY Slip Op 50995(U)

Decided on July 26, 2024

City Court Of Olean, Cattaraugus County

Dicerbo, Jr., J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 26, 2024
City Court of Olean, Cattaraugus County

Daniele Calkins, Petitioner,

against
Daniel Johnson, Respondent.

Index No. CV-163-24/OL

Nicholas Dicerbo, Jr., J.

The matter was commenced by the filing of an Order to Show Cause on July 15, 2024 which sought to restore the Petitioner to premises located at 505 N. 8th Street in Olean, New York pursuant to RPAPL §713. Petitioner alleges that the Respondent violated RPAPL §§768 and 853 by changing the locks on the premises. In addition to restoration, the Petitioner sought the maximum civil penalty of $10,000 and a referral of the matter for criminal prosecution pursuant to RPAPL Section 768. A hearing was held on July 24, 2024. Petitioner was represented by Legal Services of WNY, Inc. (Daniel Howe, Esq., of counsel) and the Respondent was represented by Michael Shane, Esq. Testimony was taken and decision was reserved. Procedural History
The Respondent, Daniel Johnson, filed a holdover petition against the Petitioner, Daniele Calkins, in this Court on June 10, 2024. A 30-day written demand to vacate the premises was served on Ms. Calkins on May 7, 2024. The parties appeared on the holdover petition on June 27, 2024 and Ms. Calkins, through her counsel, requested and was granted an adjournment pursuant to RPAPL §745. On July 11, 2024, the petition was dismissed on motion of Ms. Calkins due to defects in the affidavit of service of the written to demand to vacate. It is undisputed that Mr. Johnson changed the locks on or about July 12, 2024. 

 Analysis
Many of the facts are in dispute between the parties. Petitioner claims that she moved in with the Respondent in late February or early March of 2024 and only had a platonic relationship with the Respondent. Petitioner acknowledged that the original intention of both parties was that she would live there until she was able to find another place to reside. The Respondent testified that he and the Petitioner were in a romantic relationship and that he invited her to move in until she was able to "get on her feet" after being kicked out of her sister's home. Two of the four children of the Petitioner moved into Mr. Johnson's residence. It is undisputed, however, that there was no lease agreement between the parties and Petitioner never paid rent or contributed to [*2]household expenses to Mr. Johnson except for a $1,000 "loan" that was never paid back. 
Both parties acknowledge that at the end of March or beginning of April in 2024, the relationship between the parties, whether platonic or romantic, came to end when Respondent learned that Plaintiff was involved in another romantic relationship. Respondent changed the locks after the Petitioner and her two children left after an argument about her new relationship in April of 2024. Petitioner was able to gain access to the premises with the assistance of police. As noted above, Respondent served Petitioner with a written demand to quit on May 7, 2024. Respondent testified that he was out of town for work quite often in May and early June. However, Mr. Johnson credibly testified that from June 19, 2024 through July 11, 2024, he stayed at his residence every night and only saw Ms. Calkins a few times to pick up various small belongings and clothes. Neither the Petitioner nor her two children spent the night during this time according to the Respondent. Petitioner testified that the last time she spent the night at Mr. Johnson's residence was a few days before the July 11, 2024 court date. Petitioner claims that she would spend approximately half the week at Mr. Johnson's residence and the other half with "a friend." It is undisputed that many of the Petitioner's belongings remained at the residence, including children's beds, dressers, bikes, important documents, and a crib. The Petitioner did remove televisions and a PlayStation after Mr. Johnson's holdover proceeding was dismissed. Since the Respondent changed the locks on or about July 12, 2024, the Respondent has been residing with her new boyfriend.
Petitioner is seeking to be restored to possession of the property located at 505 N. 8th Street in Olean, New York pursuant to RPAPL §713(10). Respondent argues that the Petitioner lacks standing to seek restoration as there was no landlord-tenant relationship between the parties. Petitioner wants to be restored of possession of the property based upon her belief that she was illegally locked out pursuant to RPAPL §713(10). The Court must first determine what type of legal relationship there is between the parties. Even though the parties' dispute the fact of whether they were involved in a romantic relationship or not, it is clear that no landlord-tenant relationship existed between the parties. The Petitioner did not pay rent to the Respondent, and she did not have exclusive use and possession of the premises since the Respondent shared the residence with he and her children. It should be noted that the Petitioner did not make any claim of a landlord-tenant relationship with the Respondent. 
RPAPL §713(7) allows for summary proceedings to be brought against a "licensee," a term that is not defined in the statute. However, caselaw defines a licensee as "one who enters upon or occupies lands by permission, express or implied, of the owner, or under a personal, revocable, non-assignable privilege from the owner, without possessing any interest in the property, and who becomes a trespasser thereon upon revocation of the permission or privilege." Rosenstiel v. Rosenstiel, 20 AD2d 71, 76 (1st Dept. 1963). "A licensee has been defined as a person to whom an owner has granted a mere right to occupancy." City Enterprises, LTD. v. Posemsky, 184 Misc 2d 287 (2nd Dept. 2000). In Felli v. Catholic Charities of Steuben County, the Fourth Department held that the Plaintiff failed to state a "cause of action for deprivation of property without due process of law pursuant to 42 USC §1983 inasmuch as a licensee acquires no possessory interest in the property." 108 N.Y.S3d 624 (4th Dept. 2019)(Plaintiff asserted causes of action for the unlawful eviction in violation of RPAPL Article 7).
In the instant case, the Court determines that the Petitioner is a licensee. See, Halaby v. Halaby, 44 AD2d 495 (4th Dept. 1974)(Wife is a licensee and subject to eviction where court order provided for her support); Piotrowski v. Little, 30 Misc.609 (City Court, City of [*3]Middletown, 2010)(Same sex domestic partner is a licensee once relationship ended, where property owner's partner was not granted exclusive possession of the premises in exchange for rent, but rather received shared use and occupancy of the premises along with the owner.) As such, the Plaintiff does not have standing to maintain an "illegal lockout" proceeding and is not entitled to restoration. As a licensee, the Petitioner lacks any possible claim to possession. See, Zhu v. Li, 70 Misc 3d 139(A), 138 N.Y.S.3d 792 (App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2021); Coppa v. LaSpina, 41 AD3d 756 (2nd Dept. 2007); Shack Collective Inc. v. Dekalb Market Hall, LLC, 69 Misc 3d 1202(A), 130 N.Y.S.3d 925 (2020), Andrews v. Acacia Network, 59 Misc 3d 20 (App Term 2nd Dept. 2018); Gonzales v. Borinquen, 71 Misc 3d 1213(A), 144 N.Y.S3d 285 (Kings Co. 2020); Jones v. New York City Housing Authority by Borinquen Plaza I Houses, 72 Misc 3d 1220(A), 151 N.Y.S.3d 618 (Civ. Ct. Kings County 2021)(Court denied Petitioner's claim that he should be restored to possession because he resided at the premises for over thirty days).
The Petitioner argues that even if the Court determines that she is only a licensee, the housing Stability and Tenant Protection Act of 2019 (hereinafter "HSTPA") and the enactment of RPAPL § 768 requires this Court to restore Petitioner to possession of the premises. RPAPL § 768 provides in pertinent part that "it shall be unlawful for any person to evict or attempt to evict an occupant of a dwelling who has lawfully occupied the dwelling for thirty consecutive days or longer." This Court concedes that there is limited precedent, especially in our department, on this issue, however, several courts have addressed whether RPAPL § 768 provides restoration as a remedy to an unlawful eviction for a licensee who does not have an enforceable possessory interest. 
In Jimenez v. 1171 Washington Ave, LLC, the Court held that RPAPL § 768 was not intended to create a cause of action for restoration. 67 Misc 3d 1222(A), 128 N.Y.S 3d 150 (Civ. Ct. Bronx County 2020). See also, Jones v. New York City Housing Authority by Borinquen Plaza I Houses, supra. Both Jimenez and Jones, supra, discuss the fact that RPAPL § 768 is nearly identical to NYC Admin Code 26-521 and conclude that it should be interpreted similarly as the legislature intended to make the protections contained in the code available statewide. The Court in Jimenez notes that HSTPA did not change the language of RPAPL § 713(10), which requires "actual or constructive possession at the time of the unlawful detainer." Furthermore, the Court noted that RPAPL § 768 is almost identical to Title 26, NYC Admin. Code Ch, 5, which addresses unlawful evictions in New York City and does not change a licensee's nonpossessory interest into a possessory one. Jimenez, supra. As the Petitioner in this case has no possessory interest in the premises, the Court denies Petitioner's claim for restoration pursuant to RPAPL § 768.
Violators of RPAPL § 768 may be subject to criminal liability and civil penalties. Here, the Petitioner is seeking the maximum civil penalty of $10,000 and a referral of the matter for criminal prosecution pursuant to RPAPL § 768. A Plaintiff must have standing to bring a cause of action for unlawful eviction. As noted earlier, RPAPL § 768 provides that "it shall be unlawful for any person to evict or attempt to evict an occupant of a dwelling unit who has lawfully occupied the dwelling for thirty consecutive days or longer." (Emphasis added). The issue is whether Ms. Calkins lawfully occupied the premises. The Court in Kalikow Family Partnership, L.P. v. Doe, noted that "there is a body of appellate case law holding that a licensee does not have a possessory interest in property and thus cannot maintain an illegal lockout proceeding if removed without process." 72 Misc 3d 1172 (Civ. Ct. Kings County 2021) [*4](Licensees are not "lawful occupants'). See also, Zhu, supra. Based upon that analysis, Ms. Calkins, as a licensee, was not a lawful occupant and does not have standing to bring a claim under RPAPL § 768.
Even if the Court were to determine that Ms. Calkins was a lawful occupant pursuant to RPAPL § 768, the Court has doubt as to whether it has authority to impose civil penalties under the statute in the context of a private civil action. As noted in 276-W71 LLC v. G.S, 80 Misc 3d 216 (Civ. Ct. New York County 2023), statutory civil penalties are typically collected by a government agency. (Housing Court is not the proper forum to impose civil penalties pursuant to RPAPL § 768). The language of RPAPL § 768 fails to identify what body has civil enforcement power. In Avignone v. Waligorski, 70 Misc 3d 905 (Cty. Ct. City of Cohoes 2020) the Court held that even though the defendants violated RPAPL § 768, the Plaintiff may not seek to enforce the civil penalty provisions in a private cause of action. The Court further stated that a "private statutory cause of action is designed to compensate while a statutory penalty is designed to punish." Id. See also, 276-W71 LLC, supra. (denied civil penalties in private cause of action pursuant to RPAPL § 768).
Finally, the Petitioner alleges that the Respondent's actions of locking her out of the property are in violation of RPAPL § 853, which provides that "if a person is disseize, ejected, or put out of real property in a forcible or unlawful manner, or, after he has been put out, is heldp and kept out by force or by putting him in fear of personal violence or by unlawful means, he is entitled to recover treble damages in an action therefor against the wrongdoer." Treble damages are discretionary. See, Smart Coffee v. Sprauer, 71 Misc 3d 193 (Civ. Ct. City of New York 2021); Hood v. Koziej, 140 AD3d 563 (1st Dept. 2016). "A claim under RPAPL § 853 is only available to one evicted from property of which he or she was in actual possession." Weiss v. Bretton Woods Condominium II, 203 AD3d 1100 (2nd Dept. 2022, quoting Gold v. Schuster, 264 AD2d 547, 550 (1999); Vazquez v. Suljovic, 163 N.Y.S3d 793 (Civ. Ct. Queens County 2022). Therefore, Plaintiff is not entitled to protection or relief under this section as a licensee. See, Tantaro v. Common Ground Community Housing, 147 AD3d 684 (1st Dept. 2017). It should be noted that even if the Court were to determine that Petitioner is entitled to damages under this section, the Plaintiff failed to prove her monetary damages. See, Smart Coffee, supra.
The Court does not agree with the Respondent's actions, however, based upon the foregoing, Petitioner's Order to Show is denied in its entirety. However, the Court orders that the attorneys for the parties arrange for the Plaintiff to obtain her property at the Respondent's residence, with police assistance, no later than August 7, 2024.
Dated: July 26, 2024
Nicholas Dicerbo, Jr.
Olean City Court Judge