LEWIS S. ROSENSTIEL, Respondent, *v.* SUSAN L. ROSENSTIEL, Appellant. (And Two Other Actions.)

First Department, December 12, 1963.

*Walter S. Beck* of counsel (*Louis Nizer, Walter S. Beck* and *Simon Rose* on the brief; *Phillips, Nizer, Benjamin, Krim & Ballon,* attorneys), for appellant.

*Roy M. Cohn* of counsel (*Joel S. Stern* and *John A. Vassallo* with him on the brief; *Saxe, Bacon & O'Shea,* attorneys), for respondent.

EAGER, J. A summary proceeding, instituted by service of a copy of a precept and petition, was brought by the petitioner (plaintiff here in the consolidated action) in the Civil Court of the City of New York to remove his wife from the residence premises owned by him and formerly occupied by the parties as their marital home. The petition alleged that the plaintiff was the owner and in possession of the premises; that the plaintiff and respondent (defendant here) entered into a purported marriage; that the defendant entered into possession of the premises

with the permission of the plaintiff; that the defendant has continuously refused and prevented the plaintiff, as owner, to have access to and possession of the said premises; that the plaintiff caused to be served upon defendant, as a licensee, a notice revoking her alleged license to occupy the premises and requiring her to quit and remove from said premises on a date 10 days after service of the notice; and that the defendant holds over and continues in possession of said premises without permission of the plaintiff although the said notice to quit and remove had been served upon her according to law.

The defendant, by virtue of her denials and an affirmative defense, in her answer, alleged that she is the wife of the plaintiff; that the subject premises were occupied as their marital home; that in October, 1961, the plaintiff voluntarily abandoned the defendant, stating that he would never again return to that home; and that the statute does not authorize the maintenance of a summary proceeding brought for the purpose of dispossessing a wife from the marital home.

By an order of Special Term, the summary proceeding was removed from the Civil Court and consolidated with an action brought by plaintiff in the Supreme Court for an annulment of the marriage. Thereafter, the plaintiff moved in the consolidated action to strike the answer of the defendant to the petition as sham and frivolous; for dismissal of the affirmative defenses; and for summary judgment to the plaintiff, pursuant to rules 113 and 114 of the Rules of Civil Practice, for the relief demanded in the precept and petition. The position of the plaintiff was that subdivision 8 of section 1411 of article 83 of the Civil Practice Act (now Real Property Actions and Proceedings Law, § 713, subd. 7) expressly authorized the maintenance of this proceeding against the defendant as a " licensee " whose license " has been revoked ".

In opposition to this motion for summary judgment, the defendant submits an affidavit that she and the plaintiff were married in the City of New York on November 30, 1956; that they thereafter resided in the subject premises; that in October, 1961, while they were still living there, the plaintiff, her husband, without just cause, left the house, announcing that he would never return. For the purposes of the disposition of this motion to strike the answer, to strike the defenses, and for summary judgment, these allegations of the defendant must be accepted as true. If there are bona fide issues with respect to the truth of any of the same, the motion must be denied and the matter remanded for trial.

Special Term, relying principally on our decision in *Tausik* v. *Tausik* (11 A D 2d 144, affd. 9 N Y 2d 664) held that the summary proceeding was authorized by the statute and that it was immaterial whether the defendant wife " is validly married to the plaintiff owner, whether the subject premises constituted their marital home during their cohabitation, [and] whether plaintiff rightfully or wrongfully abandoned defendant ". (39 Misc 2d 1044, 1046.)

*Tausik* v. *Tausik* (*supra*) is not however controlling here. There, the husband and wife had voluntarily separated and a written agreement signed by the wife was held to constitute " a license to use the husband's property " (a co-operative apartment, the proprietary lease of which was in his sole name); and we stated that " [a]ll that is decided here is that a valid agreement of license was made; and the license having expired, the husband may avail himself of the statutory remedy given by subdivision 8 of section 1411 of the Civil Practice Act, instead of suing in an action of ejectment." (*Tausik* v. *Tausik, supra,* p. 145.)

Here, as distinguished from the facts in *Tausik* v. *Tausik* (*supra*), the defendant wife, in her occupancy of the marital home, had not signed an agreement with reference to her use thereof. Lawfully in possession to begin with, as the wife of the plaintiff, she continued in possession, following alleged abandonment by her husband, not by virtue of any license or special arrangement with her husband, but solely on the basis of the existence of their marriage relationship.

The question here is simply whether or not subdivision 8 (now Real Property Actions and Proceedings Law, § 713, subd. 7) may be applied to authorize the maintenance of summary proceedings to evict a wife whose rights as such have not been annulled or modified by any court decree or special agreement. Certainly, in view of the general legislative history and policy in the area of domestic relations, it would require a clear manifestation of legislative intent to render the statute so applicable. Statutory enactments purporting to cover certain rights and obligations of a husband and wife, one to the other, and the civil remedies available with respect thereto have been codified in the Domestic Relations Law, the Civil Practice Law and Rules and the Family Court Act, and thereby the general jurisdiction and responsibility in this field have been committed to the Supreme Court and the Family Court which are properly fitted and equipped to handle the myriad of problems which may arise out of a family relationship. The use and possession of the family home is so essentially a part of the jurisdiction and

responsibility of such courts in family matters that, had the Legislature intended to confer upon other courts jurisdiction over such use and posesssion, it is clear that it would have made its intent in this regard plainly known. The construction of the statute to apply to authorize summary proceedings by a husband against his wife would confer jurisdiction upon the Civil Court of the City of New York and upon City Courts, Justices' Courts and District Courts throughout the State to remove one's family from the family residence. (See Real Property Actions and Proceedings Law, § 701.) In fact, if the husband were so enabled to secure the physical removal of his wife and family from the marital home by means of a summary proceeding prosecuted by him, he could thereby in effect obtain in such courts of limited jurisdiction a separation from his wife without in any way submitting to the jurisdiction of the tribunals having general cognizance of family affairs. (See *Marshall* v. *Marshall,* 116 Misc. 249, 251; *Cipperly* v. *Cipperly,* 104 Misc. 434, 436; dissenting opinion, McNALLY, J., *Tausik* v. *Tausik, supra,* p. 146.) It is inconceivable that the Legislature would enact a law having this effect.

In any event, the legislative history underlying the adoption of subdivision 8, does clearly indicate that this particular enactment was not intended to apply under the circumstances here. Said subdivision was added by chapter 273 of the Laws of 1951. It was enacted on the recommendation of the Law Revision Commission following a study and report by Professor Ralph D. Semerad of the Albany Law School (1951 Report of N. Y. Law Rev. Comm., p. 55). The study noted that the statute as it then existed (Civ. Prac. Act, §§ 1410, 1411) did not authorize summary relief in many cases where a landlord-tenant relationship did not exist and where, following an original entry upon premises which was lawful, the occupant later, on remaining in possession, became a trespasser. (*Id.,* p. 61.) It was pointed out in the study that there " are many cases in which trespassers had been held not to be subject to summary process under Article 83, either because the entry was not unlawful or because none of the special statutory relationships existed between the party in possession and the party seeking to recover possession " (*idem,* p. 61). The study then stated that " Most of these cases tend to conform to a few patterns ", namely, seven, which were reviewed, being designated as follows (*idem,* p. 61):

" (a) Licensee Holding Possession after License Revoked;

" (b) Lessee for Years of Life Tenant Who Dies Before End of Sub-Term;

" (c) Defaulting Vendee in Possession;

" (d) Spouse of Family Holding Over after Death of Tenant or Owner;

" (e) Spouse Remaining on Premises after Separation or Divorce;

" (f) Tenant Holding Under Sublease Given in Violation of Statute or Covenant in Original Lease;

" (g) Lessee Removing Tenant Holding Over Under Prior Expired Lease."

Upon basis of the said study and report of Professor Semerad, it is important to note that the Law Revision Commission, recommending the legislation, spoke only of the need for summary proceedings " in the case of a recalcitrant licensee " and in the case of " a subtenant of a life tenant, upon termination of the life tenancy ". (1951 Report of N. Y. Law Rev. Comm., p. 50.) Thereupon, the legislation proposed by the commission, namely, the additions of subdivisions 7 and 8 to section 1411 and subdivisions 1-a and 5-a to section 1414, purported by the wording thereof to cover only the two of the seven patterns or categories reviewed in the study by Professor Semerad, namely, (a) licensee holding possession after license revoked, and (b) lessee for years of life tenant who dies before end of subterm. The commission's recommendation made no mention concerning the persons occupying the relationships mentioned in the five remaining categories of the study, in one of which is the alleged case at bar. So, it clearly appears that the legislation then adopted was only aimed at said categories ([a]-[b]); and that it was not intended thereby to generally cover persons included within the other five categories ([c] to [g]) of the Law Revision Commission study except, of course, as such persons, in a given situation, might also be licensees per se.

It is significant, too, that in Professor Semerad's study, under the category " (e) Spouse Remaining on Premises after Separation or Divorce ", he does not refer to such a spouse as a " licensee ". The following is his discussion under this category (1951 Report of N. Y. Law Rev. Comm., p. 65): " Commonly, realty occupied by married persons will be held in the name of one spouse. When the husband and wife separate, the spouse with the legal right to possession may be unable to induce the other to move from the house or apartment. The courts appear to be unswerving in their refusal to entertain summary proceedings against the refractory spouse, trespasser though he or she may be. [Citing *Cipperly* v. *Cipperly,* 104 Misc. 434, 172 N. Y. Supp. 351 (1918); *Marshall* v. *Marshall,* 116 Misc. 249, 190 N. Y.

Supp. 318 (1921); *Brooks* v. *Brooks,* 146 Misc. 335, 261 N. Y. Supp. 211 (1932). In *Mele* v. *Russo,* 168 Misc. 760, 9 N. Y. S. (2d) 203 (1938)], the same result was reached when the application was made by the grantee of the spouse owning the premises.''

Note, that the reference in the study is to the '' refractory spouse, trespasser though he or she may be ''. Certainly, with this study before it, if the Law Revision Commission had intended to recommend that the proposed legislation cover the alleged '' refractory spouse '' (as well as the persons coming within the other designated categories [c] to [g]), it would have so stated. Furthermore, the Legislature, with this study before it, would have expressed itself more explicitly if it had intended to broaden the law to include general coverage of cases against a spouse holding possession of property as such.

It is true that, in holding the statute applicable under the special circumstances present in *Tausik* v. *Tausik* (*supra,* p. 144), we stated that there is nothing therein which '' limits the term ' licensee ' so as to exclude a spouse ''. But it is to be assumed that the Legislature, in the use of the particular term, intended that it have the meaning generally ascribed thereto in the law. (See McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 232.) As generally understood in the law of real property, a licensee is one who enters upon or occupies lands by permission, express or implied, of the owner, or under a personal, revocable, nonassignable privilege from the owner, without possessing any interest in the property, and who becomes a trespasser thereon upon revocation of the permission or privilege. (See *Mumford* v. *Whitney,* 15 Wend. 380, 393; *Greenwood Lake & Port Jervis R. R. Co.* v. *New York & Greenwood Lake & R. R. Co.,* 134 N. Y. 435, 440; *Trustees of Southampton* v. *Jessup,* 162 N. Y. 122, 126; *Clifford* v. *O'Neill,* 12 App. Div. 17, 20; *Caldwell* v. *Mitchell,* 158 N. Y. S. 2d 868, 870 [JOHNSON, J.]; Clark, Covenants and Interests Running With Land [2d ed.], ch. II, pp. 13–64, and cases cited; Walsh, Law of Real Property [2d ed.], § 150; Tiffany, Real Property [3d ed.], §§ 829, 833.) This, as is fully apparent from the Law Revision Commission study and recommendation, is the sense in which the term was used in the statute.

The occupation of the marital home by the wife as such is not, however, a possession existing by virtue of the '' permission '' of her husband or under a '' personal '' and '' revocable privilege '' extended by him. On the contrary, her possession of the premises exists because of special rights incidental to the marriage contract and relationship. As long as the marriage rela-

tionship stands, unabridged by court decree or valid agreement between the parties, the husband has the obligation by virtue thereof to support and maintain his wife. (See 16 N. Y. Jur., Domestic Relations, § 548, and cases cited.) The maintenance of a home or housing for the wife is a basic and necessary element of such support. (See 16 N. Y. Jur., Domestic Relations, § 657; *Laumeier* v. *Laumeier,* 237 N. Y. 357; *Grandy* v. *Hadcock,* 85 App. Div. 173; *Lanyon's Detective Agency* v. *Cochrane,* 199 N. Y. S. 482; *Matter of Wickings,* 162 Misc. 357, 362.)

In this connection, in *McKaig* v. *McKaig* (154 Misc. 257, 258–259), the court said: " From the very beginnings of the common law the husband has been required to support and maintain his wife. This duty is based not on contract or statute but on status. (Bacon's Abridgment [7th ed. 1832], vol. I, Baron & Feme, 713.) A part of this duty is to provide a suitable home for her. It shocks one's sense of justice and of the fitness of things that a husband may in fulfillment of this duty provide such a home and later from willfulness or caprice or for no reason whatever turn her out of the home so established without providing a suitable place to live elsewhere. The law does not tolerate this."

So, a wife, in her occupation of the marital home, would not ordinarily be considered to be using the same in the status of the " licensee " of her husband. This statute is not applicable to her because she is not, in accordance with the wording thereof, a " licensee " whose " license " has " expired " when she remains in occupation of the premises upon being abandoned by her husband; nor does she hold a " license " which may be " revoked " by a notice served upon her by her husband.

Finally, it should be emphasized that where a matrimonial action is pending between a husband and wife, then, ordinarily, the matter of the occupancy and possession of the marital home should be determined by proper proceedings in such action. (See Domestic Relations Law, §§ 234, 236.) Here, notwithstanding there was pending between the parties an action for the annulment of their marriage, the defendant wife has not proceeded for temporary alimony, or as authorized by said sections for any order for use of the home pending the determination of the action; and she has now vacated the premises pursuant to the order below. Under the circumstances, and in view of the existence of the issue as to the validity of the marriage, we do not deem it proper to grant summary judgment to defendant dismissing the summary proceeding or to reinstate her into possession of the subject premises.

The order appealed from should be reversed, on the law, with $20 costs and disbursements to the appellant, and plaintiff's motion for summary judgment denied, with $10 costs.

Steuer, J. (concurring). I concur in the result, namely, that by virtue of the proceedings the defendant wife is out of the apartment and she cannot get back in. Whether in this particular case this result is reached by affirming or reversing the order on the motion for summary judgment is of small moment.

However, I cannot go all the way with the reasons underlying the decision and expressed in the scholarly opinion of my brother Eager. A spouse does not have a right to occupy realty owned by the other spouse by virtue of the marital status, any more than a spouse has a right to the use of any other property owned by the other spouse. Granted that, absent other factors, there is a privilege for such use implied in that status. Of course, the courts are empowered to require the husband to support the wife and this includes providing a home for her. In most instances the practical and expedient method of requiring the husband to provide shelter is to allow the wife to occupy the premises previously used as the marital home. But this is not to say that the court can compel the husband to allow the wife to use his property in that connection where other adequate provision is made for her.

Nor can I agree with the deductions drawn from the failure of the Legislature to enact the more specific provisions recommended by Professor Semerad. It is just as reasonable, in my opinion, to conclude that the Legislature acted upon the assumption that the situation created by the holdover of a spouse was already covered and that more specific provisions would only hamper the established procedures on provisions for support. The decision in *Tausik* v. *Tausik* (11 A D 2d 144) while distinguishable in the particular aspect pointed out in the majority opinion, must of necessity rest on recognition of these basic principles.

Botein, P. J., Breitel and Rabin, JJ., concur with Eager, J.; Steuer, J., concurs in result in opinion.

Order, entered on July 11, 1963, unanimously reversed, on the law, with $20 costs and disbursements to appellant and respondent's motion for summary judgment denied, with $10 costs.