Robert J. Trainor, J.
This is an appeal by the petitioner from a final order of the Justice’s Court, Town of Pelham, which dismissed a summary proceeding wherein the petitioner, as the alleged owner of the premises, sought to evict the respondent from said premises on the ground that the respondent was a mere licensee thereof whose license had been terminated. This is the second time the matter has been before this court on appeal. On the first occasion the Justice of the Peace had issued a final order awarding possession of the premises to the petitioner. That order was reversed for the reason that the nature of the occupancy of the respondent had not been established at the trial, and a new trial was ordered. The new trial resulted in the order referred to in the opening paragraph hereof.
William K. Smith, the respondent, and Margaret Cannon Smith were married on June 15, 1940. In 1948, after two children had been born to the couple, the respondent purchased the single-family dwelling at 658 Timpson Avenue, Pelham, New York, where two more children were born, making a total of four. In June of 1952, for some reason not disclosed in the record, the respondent invested his wife with title to the matrimonial domicile. What the consideration for this conveyance was, if any, does not appear. Sometime within the next 10 years difficulties arose between the husband and wife which, according to the record, had some connection with the wife’s drinking and resulted in her hospitalization on one or more occasions.
*936 Despite the fact that the wife frequently left the matrimonial abode, commencing in May, 1961, for varying periods of time, she never completely removed all of her personal possessions. According to her testimony at the trial she was “ in and out ” of the house between May of 1961 and February of 1963. During each of her absences from home, the four children continued to reside with the husband, as they still do.
The petitioner herein, Vivian D. Brennecke, had been a friend of Margaret Cannon Smith for a period of about 18 years, or since about 1945. 'She knew the family status of Mrs. 'Smith, as a mother and wife, and knew of the matrimonial difficulties the Smiths were having and, probably, the principal reason therefor.
On February 21, 1963, at a time when a mortgage on the matrimonial domicile was threatened with foreclosure, or was actually in process of foreclosure, Vivian D. Brennecke, the petitioner herein, paid off the mortgage and, in lieu of a satisfaction, took an assignment of the mortgage. Within a week thereafter and on February 27, 1963, Margaret Cannon Smith conveyed the mortgaged premises to the petitioner for a purported total consideration of $5,000, which was paid $500 at the closing, and $4,500 by the execution and delivery by the petitioner to Mrs. Smith of five promissory notes bearing interest at 4% per annum, one for $500 payable in August, 1963; one for $1,000 payable in November, 1963; one for $1,000 payable in February, 1964; one for $1,000 payable in May, 1964; and the final one for $1,000 payable in August, 1964. These notes were initially left in the custody of petitioner’s attorney. Later, it is said, they were delivered to Mrs. Smith. According to the proof, none of these has been paid. At the time of the alleged conveyance, the petitioner was fully aware of the fact that the premises were occupied by the husband and four children of her grantor. Assuming that the grantor has told the petitioner that the respondent was a tenant, or a squatter, or a mere licensee of the premises, did she make any inquiry of the true nature of the occupancy so as to constitute her a bona fide purchaser for value without notice of infirmities? Apparently she did not. ‘ ‘ In other words, where a purchaser of land has knowledge of any facts sufficient to put him on inquiry as to the existence of some right or some title in conflict with that which he is about to acquire, he is presumed either to have made the inquiry and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim to be considered a bona fide purchaser ”. (Bosch, Beal Property Law and Practice [1962], § 1316.) Of course, *937 even if she made such inquiry, it could not have changed the nature of the occupancy.
The question which is squarely presented here is: Under the facts stated is the occupancy of the husband that of a mere licensee? I feel that this must be resolved upon its own facts and not by seeking to squeeze it into the mould of certain cases recited in the briefs submitted, i.e., Tausik v. Tausik; Matter of Cheek v. Salkind; Cardosanto v. Cardosanto (infra).
In Matter of Cheek v. Salkind (28 Misc 2d 828) the grantor of the husband of the respondent wife succeeded in removing the wife by summary proceedings. In that case it was proved that the husband and wife were legally separated under a judicial decree. Among other things, the decree made certain provisions for payments by the husband and occupancy of the premises by the wife, as long as the husband owned said premises. Upon learning that the husband contemplated selling the premises the wife sought an order from the court enjoining the sale which application was denied. The petitioner took title and, after proper notice, evicted the wife as a licensee. All this case held was: “a wife in possession under a judicial decree of separation providing that her right of occupancy is dependent upon her husband’s ownership is a licensee within the ambit of subdivision 8 of section 1411 of the Civil Practice Act, and that summary proceedings lie by the purchaser petitioner ” (p. 830).
In Cardosanto v. Cardosanto (15 Misc 2d 1001), the owner petitioner married Lamberto Cardosanto in 1927. They were legally separated in 1935. Years later, in 1956, Lamberto got a “ mail order ” Mexican divorce, and the same year he purported to marry the occupant. In 1954 Lamberto purchased the premises in controversy and lived there with the occupant until 1957 when he left, leaving the occupant in possession. Lamberto then conveyed the premises to the petitioner (who, for all that appears was still his wife) to satisfy certain alimony arrears. The petitioner then gave occupant notice to quit, as a licensee under subdivision 8 of section 1411 of the Civil Practice Act, and, upon appeal, petitioner was granted possession. Prom the court’s characterization of the divorce herein as a “mail order ’ ’ divorce, the premises were never a matrimonial domicile, and the status of the occupant was undoubtedly that of a licensee. This distinguishes the case from the instant one.
In the Tausik v. Tausik case the facts were these: The husband and wife decided to live separate and apart. It appears that the husband had an apartment, as did the wife, and the husband also owned a co-operative apartment. The wife wrote her husband a letter stating that although she decided to live apart *938 from him she would like to occupy the co-operative apartment until she found another place, and that -she would get out 11 as quickly as possible ”, in any case not later than two months; she even enclosed a check for $450 to cover the carrying charges. When she failed to vacate at the end of two months the husband instituted summary proceedings to evict her. The Municipal Court granted a final order, which was affirmed by the Appellate Term (21 Misc 2d 599) where Justice Hofstadter wrote a strong dissent. The Appellate Division affirmed (11 A D 2d 144) where Justice McNally also wrote a strong dissent concurred in by Justice Rabin. The Court of Appeals affirmed (9 N Y 2d 664).
The Tausik case is also readily distinguishable from the instant case. Mrs. Tausik had acknowledged in writing that she was a licensee for a period of two months, and paid consideration for the license. There was no question as to her status as a licensee. As the Appellate Division majority opinion stated (pp. 144-145): “ Nothing in subdivision 8 of section 1411 limits the term 1 licensee ’ so as to exclude a spouse. * * * Clearly the written agreement herein signed by the wife * * * constituted a license to use the husband’s property. * * * All that is decided here is that a valid agreement of license was made; and the license having expired, the husband may avail himself of the statutory remedy ”. (Emphasis supplied.) I feel that this is all the Court of Appeals affirmed. Justices Hofstadter and McNally, in their dissenting opinions, held that it would be contrary to the public policy of the State if one spouse, merely by walking out, could constitute the other a licensee of the matrimonial domicile.
More recently, we have the case of Rosenstiel v. Rosenstiel (20 A D -2d 71) wherein Justice Eager wrote a learned opinion, concurred in by Justices Botein, P. J., Breitel and Rabin. In that case, the husband voluntarily left the matrimonial domicile and then sought to evict ,the wife as a licensee. The petitioner relied upon Tausik to sustain his position. Justice Eager said (p. 73): “ Tausik v. Tausik (supra) is not however controlling here. There, the husband and wife had voluntarily separated and a written agreement signed by the wife was held to constitute ‘ a license to use the husband’s property ’ * * * and we stated that ‘ [a]ll that is decided here is that a valid agreement of license was made; and the license having expired, the husband may avail himself of the statutory remedy * * * ’ Here, as distinguished from the facts in Tausik v. Tausik (supra) the defendant wife, in her occupancy of the marital home, had not signed an agreement with reference to her use *939 thereof. Lawfully in possession to begin with, as the wife of the plaintiff, she continued in possession, following alleged abandonment by her husband, not by virtue of any license or special arrangement with her husband, but solely on the basis of the existence of their marriage relationship. The question here is simply whether or not subdivision 8 (now Real Property Actions and Proceedings Law, § 713, subd. 7) may be applied to authorize the maintenance of summary proceedings to evict a wife whose rights as such have not been annulled or modified by any court decree or special agreement. Certainly, in view of the general legislative history and policy in the area of domestic relations, it would require a clear manifestation of legislative intent to render the statute so applicable.” Justice Eager then cited with approval statements made by Justice McNally in his dissenting opinion in Tausik, and reached the conclusion that the Legislature never intended to grant the eloping spouse the power to convert the remaining spouse into a licensee of a matrimonial domicile and, after citing many cases, he stated “ ‘the same result was reached when the application was made by the grantee of the spouse owning the premises’ ” (p. 76).
I am of the opinion that the facts in the instant case much more closely parallel those of the Bosenstiel case than any of the other cases cited, and on the reasoning thereof I find that the petitioner has failed to establish by a fair preponderance of the proof that the respondent is a licensee. The final order dismissing the summary proceeding herein is affirmed.