OPINION OF THE COURT
Eric Bjorneby, J.
Petitioner brings this proceeding pursuant to RPAPL 713 (7) to evict the respondent on the ground that she is a licensee whose license to reside at the premises, which are the respondent’s marital residence, has been revoked. Respondent’s defense is that she is a “family member” who can not be evicted in a summary proceeding.
The Facts
The petitioner, her brother Amit Kakwani, and their parents moved into the one-family residence known as 355 Glen Cove Avenue in Carle Place, New York in 2004. Petitioner’s mother, as trustee of a family trust, conveyed the home to the petitioner on December 8, 2006. There is no evidence as to what motivated this transfer and the only consideration recited in the deed is “Ten & other good and valuable consideration, lawful money of the United States, paid by the party of the second part.” In March 2008 Amit Kakwani traveled to India where, for the first time, he met his arranged bride-to-be, the respondent Nisha Kakwani. In September 2008 the petitioner and her brother, Amit, traveled to India where petitioner met the respondent for the first time. On or about November 29, 2008 the respondent moved by herself to the United States and into the Kakwani family home. On December 22, 2008 respondent and Amit Kakwani were married. They resided in the master bedroom of the family home, as husband and wife, until sometime in 2012 or early 2013 when Amit Kakwani moved out of the master bedroom and into another room in the house. He has not been named as a respondent in this proceeding and rent has never been sought or paid by him or the respondent.
On September 20, 2012 petitioner had respondent served with a 10-day notice to quit and on January 17, 2013 petitioner had respondent served with the instant notice of petition and petition seeking to evict the respondent alone pursuant to RPAPL 713 (7) on the grounds that she is a mere licensee whose license *629 to occupy the premises has been revoked. The respondent alleges she is a family member not subject to eviction in a summary proceeding brought pursuant to RPAPL 713 (7). In Family Court on February 15, 2013 petitioner obtained a (refrain) order of protection against the respondent and the respondent obtained a similar order of protection against her husband, Amit Kakwani, the petitioner’s brother. The matter was tried before this court on April 2, 2013 and the above facts established. On April 30, 2013 briefs were submitted and the case is now ready for decision.
The Law
RPAPL 713 entitled “Grounds where no landlord-tenant relationship exists” provides in relevant part as follows:
“A special proceeding may be maintained under this article after a ten-day notice to quit has been served upon the respondent in the manner prescribed in section 735, upon the following grounds: . . .
“7. He is a licensee of the person entitled to possession of the property at the time of the license, and (a) his license has expired, or (b) his license has been revoked by the licensor . . . .”
The question presented in this matter is whether or not a person whose right to reside in what has been her marital residence for four years, and whose right to do so stems not merely from petitioner’s permission, but from a true family relationship, can be summarily evicted as a mere licensee without the bringing of an ejectment action in supreme court. The court concludes that this question must be answered in the negative.
The seminal case on whether or not a family member can be evicted as a mere licensee, decided 50 years ago, is Rosenstiel v Rosenstiel (20 AD2d 71 [1963]). In that case, a husband sought to evict his wife from what had been the marital residence, but which was owned in his name alone. In discussing the legislative intent behind RPAPL 713 (7), the Court noted that although the Law Revision Commission report upon which the legislation was based listed numerous categories of persons who could be summarily evicted in the absence of a landlord-tenant relationship, including a spouse who remained upon the premises after separation or divorce, the legislature at that time adopted only two categories, a licensee who held over after revocation of the license and a lessee of a life tenant who died before the expiration of the lease term. The Court further noted that the *630 Supreme Court and the Family Court were specifically empowered to deal with issues surrounding property and the breakup of a family, and went on to hold that a spouse’s right to occupy the family residence stems not from her husband’s permission, but from the very family relationship itself, and that she therefore could not be evicted as a mere licensee.
It must be noted that the statute itself contains no definition of a licensee. The Rosenstiel Court, in observing that there is nothing in the statute to specifically exclude a spouse from the licensee category, stated:
“But it is to be assumed that the Legislature, in the use of the particular term, intended that it have the meaning generally ascribed thereto in the law. (See McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 232.) As generally understood in the law of real property, a licensee is one who enters upon or occupies lands by permission, express or implied, of the owner, or under a personal, revocable, nonassignable privilege from the owner, without possessing any interest in the property, and who becomes a trespasser thereon upon revocation of the permission or privilege. (See Mumford v. Whitney, 15 Wend. 380, 393; Greenwood Lake & Port Jervis R. R. Co. v. New York & Greenwood Lake & R. R. Co., 134 N. Y. 435, 440; Trustees of Southampton v. Jessup, 162 N. Y. 122, 126; Clifford v. O’Neill, 12 App. Div. 17, 20; Caldwell v. Mitchell, 158 N. Y. S. 2d 868, 870 [Johnson, J.]; Clark, Covenants and Interests Running With Land [2d ed.], ch. II, pp. 13-64, and cases cited; Walsh, Law of Real Property [2d ed.], § 150; Tiffany, Real Property [3d ed.], §§ 829, 833.) This, as is fully apparent from the Law Revision Commission study and recommendation, is the sense in which the term was used in the statute.” (20 AD2d at 76.)
Black’s Law Dictionary (9th ed 2009) defines a licensee as “[o]ne who has the owner’s permission or passive consent to enter the owner’s premises for one’s own convenience, curiosity, or entertainment.” It cannot be disputed that a true family relationship, which includes a shared home, involves a far deeper and more permanent commitment than one based upon mere “convenience, curiosity, or convenience.”
A year after Rosenstiel, the Westchester County Court decided Matter of Brennecke v Smith (42 Misc 2d 935 [1964]). In that *631 case, respondent purchased what became the marital residence. At some point he deeded the home to his wife and they continued to reside there together with their four children. Thereafter, the wife left the marital residence and, as a result of financial difficulties, she in turn deeded the home to a friend, the petitioner therein, who brought the summary proceeding to evict the respondent as a licensee. The court held that respondent could not be reduced to the status of a licensee simply because the respondent’s wife vacated the marital residence, and denied the petition even though the respondent was not actually a member of the petitioner’s family.
In 1987, what has come to be known as the “family exception” as to who may be deemed a licensee for summary eviction purposes was expanded in Minors v Tyler (137 Misc 2d 505 [1987]). In that case, the petitioner was the titled owner of a one-family home in which he lived with the respondent as husband and wife for a number of years, though the parties never legally married. Eventually, petitioner sought to have the respondent evicted as a licensee. Citing Rosenstiel and other cases, the court denied the petitioner’s motion for summary judgment holding that the respondent under these circumstances was not a licensee.
In Nagle v Di Paola (134 Misc 2d 753 [1987]), the court was asked to consider whether petitioner, who owned what became the family home prior to his marriage to the respondents’ mother, who in turn had custody of her two children, aged 15 and 17 from a prior marriage, could summarily evict his stepchildren as licensees whose licenses he claimed to have revoked. The court held that the stepchildren were not licensees because their right to reside in the home flowed not from the petitioner’s permission but from their relationship to their mother who was married to the petitioner.
In 1989 the Court of Appeals decided Braschi v Stahl Assoc. Co. (74 NY2d 201 [1989]). In construing the meaning of the statutory term “family” for purposes of determining succession rights to a rent-controlled apartment the Court stated:
“The intended protection against sudden eviction should not rest on fictitious legal distinctions or genetic history, but instead should find its foundation in the reality of family life. In the context of eviction, a more realistic, and certainly equally valid, view of a family includes two adult lifetime partners whose relationship is long term and characterized *632 by an emotional and financial commitment and interdependence. This view comports both with our society’s traditional concept of ‘family’ and with the expectations of individuals who live in such nuclear units (see also, 829 Seventh Ave. Co. v Reider, 67 NY2d 930, 931-932 [interpreting 9 NYCRR 2204.6 (d)’s additional ‘living with’ requirement to mean living with the named tenant ‘in a family unit, which in turn connotes an arrangement, whatever its duration, bearing some indicia of permanence or continuity’ (emphasis supplied)]).” (Id. at 211.)
In 1995, the case of Sirota v Sirota (164 Misc 2d 966 [1995]) was decided. In that case the adult respondents, aged 27 and 31 years, lived in the marital home with their mother and cared for her until she died. Upon her death, the petitioner father, who had previously vacated the family residence and whose divorce action was apparently abated by death of the respondents’ mother, sought to evict the respondents. Although this was not a licensee case but rather a landlord-tenant case, in finding that the respondents were not tenants the court held, reminiscent of Brennecke, that
“[t]his court finds that the premises in this case have been used as the family residence; in it respondents, now adults, have lived with petitioner, their father, and his wife, their mother, for nearly 30 years, making it their home. They continued to reside there in his absence, and there cared for their mother until her death. Under such circumstances, the petitioner could not, merely by walking out, constitute them tenants whom he may oust by summary proceeding.” (Id. at 968.)
Thus far, the law seemed clear that not only spouses, but other immediate family members as well, could not be evicted from the family home as mere licensees by way of a summary proceeding, and that a petitioner who wished to oust a family member had to proceed by way of the less abrupt vehicle of an ejectment action in the supreme court. Then, in 2001, the case of Blake v Stradford (188 Misc 2d 347 [2001]) was decided, which seemed to cast doubt on this principle. In that case, the court decided that a petitioner could bring a summary proceeding against his ex-domestic partner on the theory that she was a mere licensee whose license had been revoked, although he could not also evict their children as their right to reside in the family home stemmed not from his permission previously given but *633 from special rights incidental to the parent-child relationship. The court reached this conclusion in reliance upon Morone v Morone (50 NY2d 481 [1980]) which held, at page 486, that “cohabitation without marriage does not give rise to the property and financial rights which normally attend the marital relation.” This court believes however that the Blake court’s reliance upon Morone is misplaced because the above language is taken out of context. The Morone case was a “palimony” case in which the plaintiff sought compensation for domestic services performed, and upon an oral contract for maintenance and support, despite the absence of a marriage. It had nothing to do with an eviction from the family residence or summary proceedings under RPAPL 713.
In any event, in 2003 DeJesus v Rodriguez (196 Misc 2d 881 [2003]) was decided. In that case the titled petitioner sought to evict his former girlfriend and their two children, aged five and eight years, as licensees, despite the petitioner and respondent having resided together in what was the family home for 10 years. The court held that “[mjodern life requires the courts to recognize that unmarried couples acquire rights similar to married occupants as it affects continued occupancy of the home they have shared” and further on in its decision stated “[w]hile respondent does not have the legal status of a wife, there is no question that she is more than a licensee” (id. at 885). In 2006 the concept that RPAPL 713 (7) was not intended to allow family members to summarily evict each other was further made clear in Williams v Williams (13 Misc 3d 395 [2006]). In that case a grandmother was not permitted to maintain a licensee proceeding against her twin 24-year-old grandchildren who had resided with her since they were 11 years old. After reviewing the case law involving licensee proceedings against various types of family members, the court held:
“These cases seemingly show that occupancy due to familial relationship does not constitute a licensee agreement as intended by RPAPL 713 (7). There are various forms of family relationships ranging from spousal, parent and child, and even nonmarried couples. They are unique and thus should not be terminated through summary proceedings, which tend to be speedy. Instead, more appropriate avenues must be taken such as ejectment actions or proceedings in Family Court.” (Id. at 399.)
Finally, in dismissing the proceeding the court held, citing the Braschi case, that “[protections against sudden eviction should *634 not be determined by genetic history, but should instead be based on the reality of family life” (id.). The Appellate Term’s decision in Sears v Okin (16 Misc 3d 134[A], 2007 NY Slip Op 51510[U] [2007]) is clearly distinguishable because the court found that the respondent’s right to occupy the premises had expired pursuant to the terms of a Family Court order. Likewise, the case of Landry v Harris (18 Misc 3d 1123[A], 2008 NY Slip Op 50174[U] [2008]) is also distinguishable from the case at bar. In that case, the respondent’s motion to dismiss was denied as there were issues of fact as to whether in fact the parties actually lived together as a “family.” Nevertheless, the court went on to note:
“That said, the parties do not dispute a key, determinative fact: that Azlan is their minor son. Landry may not evict his son, because a party may not evict a family member in an RPAPL 713 (7) summary licensee holdover proceeding. (See e.g. Rosenstiel v Rosenstiel, 20 AD2d 71 [1st Dept 1963] [spouse]; Sears v Okin, 2007 NY Slip Op 51510[U] [App Term, 2d Dept, 9th & 10th Jud Dists, July 26, 2007] [minor children]; Sears v Okin, 2004 NY Slip Op 51691[U] [App Term, 2d Dept, 9th & 10th Jud Dists, Dec. 23, 2004] [minor children]; Williams v Williams, 13 Misc 3d 395 [Hous Part, Civ Ct, NY County, 2006] [adult grandchildren]; Sirota v Sirota, 164 Misc 2d 966 [Hous Part, Civ Ct, Kings County 1995] [adult children], modified on other grounds 168 Misc 2d 123 [App Term, 2d Dept, 2d & 11th Jud Dists, 1996].)” (Id. at *2.)
As for the analysis regarding the existence of a “family relationship” the 2009 case of Lally v Fasano (23 Misc 3d 938 [2009]) is illustrative. In that case, the respondent lived with her husband in a “beach cottage” which was located on her father-in-law’s property and which was owned by her father-in-law. Six years after the marriage, her husband left the marital residence and the petitioner father-in-law commenced the summary licensee proceeding with a 10-day notice to quit. In finding that respondent was a licensee and was not entitled to the protection provided by a “family relationship,” and granting summary judgment to the petitioner, the court noted that the petitioner and respondent never lived together in the same home as a family unit and that the respondent was neither socially nor financially dependent upon the petitioner.
Then, in the 2009 case of Drost v Hookey (25 Misc 3d 210 [2009]), a judge of the Suffolk County District Court held that *635 the prior case-by-case analysis in licensee proceedings as to whether or not a “family relationship” existed among the parties should be abandoned for a more bright-line approach whereby all persons residing together in some sort of family relationship, without the benefit of a landlord-tenant relationship, should be classified as licensees of the titled owner unless a specific statutory “opt-out” could be identified by the respondent. In that case, the respondent was the petitioner’s former girlfriend with whom he had lived for approximately three years. No children were involved. The court, relying upon Blake v Stradford and Morone v Morone, decided that respondent, whom petitioner had no legal obligation to support, was a licensee and, without a statutory “opt-out” such as a right to support from the petitioner, could be evicted as such via the vehicle of a RPAPL 713 (7) licensee proceeding.
This same approach was adopted by the court in Piotrowski v Little (30 Misc 3d 609 [2010]), a same-sex partner case from the Middletown City Court, where this “objective” analysis regarding the existence of a statutory opt-out from licensee status was preferred. This court cannot agree. This court prefers the analysis of Judge Stephen L. Ukeiley, author of The Bench Guide To Landlord & Tenant Disputes in New York (2011), where at page 39 he writes:
“With limited exceptions, a family member may not evict another family member in a summary proceeding. This is the case because where the occupancy of the subject premises arises out of the ‘familial relationship,’ such as an adult child who has lived in the family home since birth, a summary proceeding may not be maintained.”
Judge Ukeiley applied this “family exception” in his decision in the 2009 licensee case of Robinson v Holder (24 Misc 3d 1232[A], 2009 NY Slip Op 51706[U] [2009]). In that case, the petitioners, a mother and son, sought to evict the respondent, the son’s girlfriend, and their child-in-common, from premises owned by the petitioner grandmother and her son, and resided in only by the respondent, her child, and the petitioner son when he was not incarcerated. After a careful review of the case law, and a discussion of whether or not persons involved in “familial” relationships were exempt from summary licensee proceedings, the court held that the respondent therein, due to her “familial” relationship with the petitioners, was not a licensee within the meaning of RPAPL 713 (7).
*636 Discussion
While bright-line rules such as the “statutory opt-out” certainly have their allure, the fact patterns which arise in this area of the law simply do not lend themselves to such mechanical analysis. Every family, traditional or nontraditional, is different, and each case must be carefully analyzed by the court on a case-by-case basis to determine whether or not the parties were involved in a true family relationship as opposed to mere friends or temporary live-in paramours. If in fact a family relationship exists, a titled family member should not be permitted to break up the family unit and evict another family member in summary fashion with a 10-day notice to quit. In some areas of the criminal law, such as search and seizure, one’s home is cloaked with special protections (see Payton v New York, 445 US 573 [1980]). Likewise, in the civil law the home is a special place from which, as discussed above, family members may not be summarily removed at the whim of the title holder.
If the only family members protected from summary eviction as licensees pursuant to a 10-day notice to quit were those who could identify a statutory right to support and shelter, then the Sirota children, who lived in the family home their entire lives and cared for their mother until the day she died, could have been evicted on 10 days’ notice. If the only family members protected from summary eviction as licensees pursuant to a 10-day notice to quit were those who could identify a statutory right to support and shelter, then the respondent Rodriguez, who lived with the petitioner for 10 years and bore him two children, could have been evicted on 10 days’ notice and left with the choice of leaving her children behind or taking them with her, effectively allowing them to be evicted by their father as well. If the only family members protected from summary eviction as licensees pursuant to a 10-day notice to quit were those who could identify a statutory right to support and shelter, then the Williams twins, aged 24, could have been evicted from the only home they had known since they were 11 years old on 10 days’ notice. If the only family members protected from summary eviction as licensees pursuant to a 10-day notice to quit were those who could identify a statutory right to support and shelter, then Ms. Holder could have been evicted from the only home she has known since giving birth to the petitioners’ grandson/son.
The arbitrariness and potential for extreme unfairness of a bright-line rule such as the limited “statutory opt-out” from a *637 proceeding pursuant to RPAPL 713 (7), advocated in some of the above-cited cases, is well illustrated by the facts in the instant case. The young respondent herein is an unemployed woman, born and raised in India, whose family arranged a marriage for her to the petitioner’s brother. The petitioner’s family brought her to this country just a month before her wedding and provided her with a marital residence, the only home she has known since her arrival in this country and her marriage to the petitioner’s brother over four years ago. They have lived together as a true family with all the indicia of a common home, financial support, and emotional interdependence. Her right to reside in the instant premises arises not merely from the petitioner’s consent but from her marriage into the family. Since, technically, the petitioner has no legal obligation to support the respondent, the respondent would not have the theoretical protection of a “statutory opt-out” analysis and would be subject to eviction as a licensee, accomplishing for her brother what he himself could not accomplish himself, namely to evict his wife from the marital residence without provision for shelter or a single dime for support. If the legislature ever intended such an unjust result, which this court seriously doubts, then it needed to spell it out when it enacted RPAPL 713 (7).
This is not to say that a titled owner of a family residence, living with family members where the family relationship has broken down, has no remedy. As often noted in the above-cited decisions, a supreme court ejectment action is available to obtain relief. All this court holds is that a family member may not be summarily evicted from the family home with a 10-day notice to quit. A more deliberate process is required and is readily available.
Conclusion
Accordingly, the instant petition is dismissed.