Dave v Vaghela (2024 NY Slip Op 51342(U))

[*1]

Dave v Vaghela

2024 NY Slip Op 51342(U)

Decided on September 26, 2024

Justice Court Of The Town Of Dewitt, Onondaga County

Young, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 26, 2024
Justice Court of the Town of DeWitt, Onondaga County

Sanjay N. Dave, Petitioner

against
Jignasaben Vaghela, Respondent.

Docket No. 24070139

Vincent Finocchio, Esq.
Finocchio Law Firm
250 Harrison Street, Suite 500
Syracuse, New York 13202
Stewart Weisman, Esq.
Centolella Law, P.C.
5793 Widewaters Parkway, Suite 210
DeWitt, New York 13214

Samuel C. Young, J.

Procedural History
Petitioner Sanjay Dave has brought this summary proceeding against his ex-wife, Jignasaben Vaghela, to recover possession of the home on Westerly Terrace, Jamesville, in the Town of DeWitt. Although no specific statutory authority is cited in the petition for this proceeding, it is clear that it is brought under Real Property Actions and Proceedings Law §713, which provides for a summary proceeding in certain circumstances where no landlord-tenant relationship exists. 
RPAPL §713 provides that a summary proceeding may be maintained after a ten day notice to quit has been served on the respondent, upon the grounds that the respondent was a squatter who intruded on the property without permission, RPAPL §713(3), or a licensee whose license has been revoked. RPAPL §713(7). 
In his Petition, Petitioner alleges, in pertinent part, 1) that he is the owner of the premises; 2) that the Respondent ex-wife entered into possession without his permission on or about October 1, 2022; and 3) that a 10 day notice to quit was served on the Respondent, and that she continues in possession after that time has expired.
Petitioner had the Respondent personally served with a ten-day notice to quit on June 24, 2024. Petitioner signed and notarized his Petition seeking eviction on July 1, 2024. The Notice of Petition and Petition were served upon the Respondent on July 24, 2024, and noticed for an appearance on August 7, 2024. As there was a significant dispute in the facts, this matter was scheduled for a trial on August 21, 2024. On August 21, the case was tried before this Court. Petitioner called himself, and presented various exhibits. Respondent testified on her own behalf, presented various exhibits of her own, and called Samuel Ghalchi as a witness. Once again, there were significant disputes in the testimony.
As the Petitioner, Mr. Dave has the burden to prove that Ms. Vaghela was a squatter who entered into possession without Petitioner's permission.
Facts
Mr. Dave and Ms. Vaghela were married in 2007. Their son was born in January of 2010, and they have always co-parented him. The couple was divorced in 2010, but continued to run a business together, a convenience store located on Warren Street in downtown Syracuse. Petitioner testified that he purchased the Westerly Terrace property in October of 2018. He testified that he moved into the house, and that Ms. Vaghela never lived there with him.
According to Petitioner, he made arrangements to travel to India in the Fall of 2022, and he asked Ms. Vaghela to care for their then twelve-year-old son while we was gone for several months. He denies that he invited her to stay in the house, but found out through security cameras while he was gone that she had moved into the house on Westerly Terrace. He testified that he called the police to seek to have her removed, but the police took no action to remove her. After returning back to the United States, he sought to evict her, but was unsuccessful on several occasions. In June of 2024, he had her served with a notice to quit, and commenced this Petition in July to evict her as an alleged squatter.
Mr. Dave also admitted on cross-examination that in May of 2024 he deeded the home to himself and a Virendrasinh Chavda, who he described as a store manager for the Warren Street store. He testified that he had some sort of "financial situation" with Mr. Chavda, and that he put Mr. Chavda on the deed with him until the financial situation was resolved. Mr. Dave was vague and evasive about this relationship, but acknowledged that he and Mr. Chavda were actually co-owners of the home at the time this summary proceeding was brought. He had no explanation as to why he did not plead those facts in the petition.
Respondent Vaghela provided a remarkably different account, through her testimony and exhibits. She testified that she, Petitioner Dave and their son had all been living together in a room at the back of the store on Warren Street until the home was purchased. She testified that she was working at the store for 12-15 hours per day, without pay. She testified that when Petitioner Dave bought the house on Westerly Terrace in late 2018, the three of them—Mr. Dave, Ms. Vaghela, and their son—all moved into the home, and continued to reside there together for approximately four years. She testified that she has lived in the home with their son continuously since late 2018. 
Ms. Vaghela testified that Mr. Dave took a trip to India in 2022, and that she remained in their home with their son. When he returned after several months, he told her to stop working at the store, and she agreed. However, she remained in the Westerly Terrace home with their son, even after Mr. Dave moved out. She testified that she did look for an apartment in 2022 for herself and their son, because Mr. Dave had agreed to give her money to pay her rent, and to return her passport and other documents to her. However, when he failed to do so, she never moved out, but remained in the house on Westerly with their son.
In support of her testimony, Ms. Vaghela produced a series of photographs as exhibits. These photographs depicted Mr. Dave, Ms. Vaghela, their son, and various members of her family in the home at various times between November 2018 and 2022. There were family photos at what was described as an open house after they moved in (November 2018), a photo of her ceremonially blessing the kitchen shortly after they moved in (November 2018), Ms. Vaghela standing inside a decorated front door (May 2019), Ms. Vaghela and Mr. Dave, arms around one another and posing together in front of the stairs (October 2019), and Ms. Vaghela dressed in traditional garb and celebrating a festival in the living room (March 2021).
Ms. Vaghela also produced bank statements for an account in her name, with an address [*2]for the home on Westerly Terrace, which were dated May-June 2019, May-June 2022, and July to August 2022. She also produced a bank statement for the same account, dated February to March, 2018, which was addressed to 353 S. Warren Street, the address of the store. She testified that Mr. Dave had the address on the bank account changed to the Westerly Terrace address when they moved into the home.
Finally, she produced a tuition bill for their son's attendance at a private school for the 2021-2022 school year, sent to her name in March of 2022 to the Westerly Terrance address. She acknowledged that Mr. Dave paid the tuition bills, but that they came to her name at their address on Westerly Terrace. 
Ms. Vaghela's testimony was also buttressed by the testimony of non-party witness Samuel Ghalchi, who testified remotely. Mr. Ghalchi had owned the building on Warren Street where the parties' store was located. He stated that he started leasing commercial space to them in 2008, and continued to do so until he sold the building in 2019. He said he believed Mr. Dave and Ms. Vaghela were married, and testified that they lived with their son in a room off of the store until late 2018. Mr. Ghalchi testified that in late 2018, they bought the home on Westerly Terrance, and moved into the home together, continuing to reside there together. Mr. Ghalchi testified he was in the home more than 30 times between 2018 and late 2019. He stated that whenever he was in the home, Ms. Vaghela was there. She cooked in the house, showed him around, had her possessions throughout the house, and identified the house as her home. 
Legal Analysis
The question this Court must determine is whether the Petitioner has met his burden of proof by proving that Ms. Vaghela had the status of squatter, subject to removal by the Petitioner at his demand, or after his consent was revoked. Respondent contends that she has lived in the home with her son continuously since November 2018, and with Mr. Dave until he moved out in 2022, and that whether married or not, it was their family home. If Ms. Vaghela's version is true, then she may qualify for the "family exception" to eviction.
New York Courts have recognized a family exception to eviction since the seminal case of Rosenstiel v. Rosenstiel, 20 AD2d 71 (1st Dep't 1963), decided more than 60 years ago. In that case, the First Department recognized that a wife who had resided in the family home with her husband was not a licensee subject to eviction upon revocation of consent of the husband. Rosenstiel, 20 AD2d 71. 
Since that time, New York Courts have expanded the so-called familial exception to include unmarried mothers, grandchildren, adult children, step-children, and even former in-laws. Kakwani v. Kakwani, 40 Misc 3d 627 (Dist. Ct. Nassau Co. 2013) (ex-sister-in law could not evict brother's ex-wife from the family home); Robinson v. Holder, 24 Misc 3d 1232(A), (Dist. Ct. Suffolk Co.) (2009) (holding father could not evict girlfriend and their common child); Williams v. Williams, 13 Misc 3d 395 (Civ. Ct. New York Co. 2006) (grandchildren were not licensees subject to eviction); Sirota v. Sirota, 164 Misc 2d 966 (Civ. Ct. Kings Co. 1995) (adult children were not licensees); Nagle v. DiPaola, 134 Misc 2d 753 (Nassau Co. Dist. Ct. 1987) (teenage step-children).
It is true that a number of other courts have held that summary proceedings are an available means to evict family members as licensees. See, e.g., Halaby v. Halaby, 44 AD2d 495 (4th Dep't 1974) (husband could evict wife as licensee where family court had already fully addressed questions of financial support); Lally v. Fasano, 23 Misc 3d 938, (Dist. Ct. Nassau Co. 2009) (father-in-law sought to evict daughter-in-law as licensee); Blake v. Stadford, 188 Misc 2d [*3]347 (Dist. Ct. Nassau Co. 2001) (boyfriend could evict former girlfriend and mother of his child, who obtained protective order against him). 
In Braschi v. Stahl Associates, 74 NY2d 201 (1989), the Court of Appeals expanded the family exception to include domestic partners, holding that a significant factor in determining whether the familial exception is applicable is whether the parties resided together as a familial unit, "with some indicia of permanence or continuity." Braschi v. Stahl Associates, 74 NY2d 201, 211. The Court determined that "[t]he term family ... should not be rigidly restricted to those people who have formalized their relationship by obtaining, for instance, a marriage certificate ... The intended protection against sudden eviction should not rest on fictitious legal distinctions or genetic history, but instead should find its foundation in the reality of family life" (Id.).
Since the early days of the family exception established by Rosenstiel, many of our courts have been less concerned with the marital status of the parties, and more concerned with whether the household members have resided as a family unit, often with financial and emotional interdependence and an indicia of continuity. Kakwani v. Kakwani, 40 Misc 3d 627. This calls for a case-by-case analysis of the relationship in question, and the circumstances under which the parties resided together. In Minors v. Tyler, 137 Misc 2d 505 (New York Cty. Civ. Ct. 1987), for instance, that court recognized the family exception where the petitioner sought to evict a romantic partner as licensee, finding that the partner was not a mere licensee, but a family member based upon the long-standing relationship. In Nauth v. Nauth, 42 Misc 3d 672 (Civ. Ct., Bronx Co., 2013), the court found that an ex-wife, who had resided long-term with her former husband, to be a family member and not a licensee. In Saoidoh v. Saoidoh, 49 Misc 3d 1216(A), (Civ. Ct. Bronx. Co. 2015), the court found that an ex-husband could not use the summary eviction proceeding to remove his former spouse and mother of his child from the home which they shared even after their divorce was finalized. 
Conclusion
Turning, then, to the facts of this case, the Petitioner, Mr. Dave, contends that he purchased the home in late 2018 for his own use, and that the Respondent moved in for the first time while he was out of the country in 2022, and that she thereafter continued on as a squatter. The Respondent, Ms. Vaghela, contends that the three of themMr. Dave, Ms. Vaghela, and their sonmoved into the house together in November of 2018, and that they continued to reside there as a family until Mr. Dave moved out in 2022. Since 2022 she has resided there with her son.
The Court does not find Mr. Dave's testimony particularly credible, given the photographs, bank statements, and tuition bill, which is at least some evidence that they were living together in the home as a family unit from 2018 to 2022. Mr. Dave's testimony that Ms. Vaghela was an invited guest and not a resident strains credulity. Mr. Dave also claimed to have no knowledge of where his ex-wife was living before she allegedly began squatting in his home. Given their shared custody of their son, this is likewise hard to believe. 
On the other hand, Samuel Ghalchi's testimony that the family had been living together in a room behind the store, and moved into the house together in 2018, and continued to live in the house together, and appeared to hold themselves out as a married couple, was credible, and gives further support to Ms. Vaghela's version of the events.
The testimony of the parties was certainly contradictory, and there were aspects of each party's testimony that the Court finds difficult to believe. However, it is the Petitioner's burden [*4]in this proceeding to prove that Ms. Vaghela was a squatter, and entered into and remained in the home without permission of Mr. Dave. Mr. Dave has failed to meet his burden by establishing Ms. Vaghela's status as a squatter. 
Rather, the Court is persuaded that Ms. Vaghela has the status of a family member, and is not subject to removal by summary proceeding. This is especially true given the fact that she resides in the home with the parties' fourteen-year-old son. Despite the 2010 divorce and the apparent absence of any order of custody or support, the Court notes that Mr. Dave continues to have a responsibility to support his son, including providing him shelter. Family Court Act §§ 413. Evicting the Respondent likely means evicting their son as well. This is certainly not something within the purview of a summary proceeding under RPAPL Article 7.
Finally, even if the Respondent were a squatter, Petitioner served the Respondent with a ten-day notice of termination on June 24, 2024, and then signed and notarized the petition only seven days later, on July 1st. Therefore, the Petition was untimely, and must be dismissed as facially insufficient. 
For the foregoing reasons, the Petition for eviction is hereby DISMISSED.
This constitutes the Decision and Order of this Court.
Samuel C. Young
DeWitt Town Justice
September 26, 2024
DeWitt, New York