Martin v Drammeh (2026 NY Slip Op 50293(U))

[*1]

Martin v Drammeh

2026 NY Slip Op 50293(U)

Decided on March 10, 2026

Civil Court Of The City Of New York, Bronx County

Donoghue, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 10, 2026
Civil Court of the City of New York, Bronx County

Jean Martin, Petitioner-Landlord,

againstB. Drammeh a/k/a JANE DOE, JOHN DOE, JANE DOE 1, Respondent-Tenant.

Index No. LT 328788-23/BX

Elizabeth Donoghue, J.

After trial, the decision and order is as follows:
In this licensee holdover proceeding, JEAN MARTIN, ("petitioner") seeks possession of Apartment Second Floor, Bronx, New York, 10469 ("premises") from respondents B. DRAMMEH a/k/a JANE DOE, JOHN DOE and JANE DOE 1 ("respondents").
Procedural History.Respondent DRAMMEH was served with a ten-day notice to quit which alleges that respondent came into possession of the apartment either by intrusion or as a licensee of Isorine Lobban or Porter (hereafter PORTER), the prior owner of the building, which license expired upon the 2018 death of PORTER. Petitioner seeks possession pursuant to §§ 713(3) and 713(7) of the Real Property Actions and Proceedings Law ("RPAPL").
Respondent interposed an answer containing defenses that she is a tenant, that the predicate notice is defective, that petitioner failed to state a cause of action, that the subject premises is a single room occupancy ("SRO") and rent stabilized, that a claim for use and occupancy does not lie, and that this action is retaliatory. Respondent interposed counterclaims for the breach of the warranty of habitability, harassment, for an order to correct and for attorney's fees. Both parties amended their pleadings; notably, respondent added claims of de facto rent stabilization and illusory tenancy in her amended answer. (See NYSCEF No. 35)
The TrialThe trial took place on March 18, March 25, April 7, May 6, August 29, and October 3, [*2]2025.[FN1]
The parties submitted post-trial memoranda on December 12, 2025.
Testimony of two witnesses at trial
Jean Martin, PetitionerPetitioner MARTIN testified that she is the owner of the 2 family subject premises. MARTIN purchased the building from PORTER on March 22, 2007. Although she never met or knew PORTER before the closing, MARTIN allowed PORTER to reside on the first floor at the time the property transferred until her death in 2018. MARTIN alleges that PORTER granted DRAMMEH a license to reside on the second floor. MARTIN claims she never entered a lease with, or took rent from, respondent DRAMMEH. When she purchased the building, MARTIN testified, the second floor was empty, and she never sought to rent it as it was in poor condition.
MARTIN admitted that although she was responsible for the building, she never went to the building because she did not have access. She recalled going to the building once, after receiving a complaint of no heat. MARTIN testified that she was threatened with a knife at the building. She was frightened of PORTER's daughter and specifically recalled her fear several times during her testimony.
As MARTIN did not go to the subject premises, she was asked about ownership responsibilities. For example, when asked who shoveled snow, MARTIN replied "Isorine [PORTER] said she would do all that." When asked why the Con Edison bills for the second floor were never changed from PORTER to MARTIN's name after MARTIN took ownership in 2007, MARTIN claimed she had no time in 11 years to transfer the Con Edison account to her name. MARTIN did not answer how garbage was removed. When asked who responds to repair [*3]requests, MARTIN claimed that no one ever asked her for repairs (except for one heat complaint) by PORTER'S daughter.
MARTIN testified about litigation arising from the subject building. Initially MARTIN could not recall suing PORTER in 2011, testifying that she could not recall details of events from 2007 forward as it was "so long ago". But then she recalled that she "might have" sued MARTIN.[FN2]
MARTIN was sued by respondent in 2 HP actions, in 2022, Drammeh v James and Martin, HP 2378/22 and in 2024, Drammeh v Martin HP 3491/24.
MARTIN testified that she brought respondent to court in this case, to "get the building cleaned up."
Respondent Bejan DrammehRespondent Bejan DRAMMEH credibly testified that she has resided on the second floor since 2008 with her children, now aged 25, 22, 20 and 17 years old. Respondent met PORTER in 2007, when PORTER began babysitting her son. Respondent mentioned to PORTER that she needed to move. In 2008, PORTER told DRAMMEH that people living on the second floor of her building were moving, making the second floor available. Respondent identified PORTER as her former landlord because PORTER said it was her building. Respondent testified that PORTER never told her that MARTIN owned the building. Respondent submitted leases between PORTER and DRAMMEH for the years 2008, 2009, 2014, 2015 (R C) and rent receipts from PORTER (R D). Receipts for the electric bills for the second floor and basement showed utility bills in PORTER (LOBBAN)'s name in 2017, 2018 and 2025. (R B)
Respondent testified as to the physical layout of living spaces on each floor totaling 6 separate households. She described there being 2 living spaces or rooms on the basement level; 1 living space on the first floor; and 3 living spaces on the second floor. She introduced a video tape (R H) and violations from DOB and HPD (R G, R L) confirming the use of the space for some of the rooms. On the second floor, she shares a bathroom with others on her floor.
When she took occupancy, respondent understood that PORTER was her landlord. She recalled that in 2009, PORTER asked DRAMMAH to meet MARTIN, identified as PORTER'S "partner". PORTER, DRAMMEH, MARTIN and an unidentified male, met to discuss adjusting the rent for DRAMMAH. DRAMMEH said she could not afford to pay more rent as she was paying for the electricity for many people in the building. MARTIN was silent at this meeting in 2009.
In 2011, MARTIN served a Notice of Termination on respondent on March 25, 2011. It states:
Notice of Termination of Tenancy to respondent Drammah [sic]PLEASE TAKE NOTICE that You, Bajen Drammah, are the tenant of the premises described as: all rooms, second floor, Apartment #2, 3348 Fenton Avenue, Bronx, New York 10469 . . .PLEASE TAKE NOTICE that the undersigned Landlord elects to terminate your tenancy of the subject premise. (R I) [emphasis added] ] (signed by MARTIN)Respondent took the notice to PORTER in 2011, (R I). PORTER told her not to worry [*4]about it, and the case was not pursued.
In 2019, MARTIN met DRAMMEH and asked her for the names of people living in the building, and their phone numbers. DRAMMEH provided the information to MARTIN.
In 2020, MARTIN went to the premises to tell DRAMMEH she would give her a lease, however, she never returned to the building with a lease.
In 2022, respondent brought MARTIN [FN3]
to court for repairs, Drammeh v James and Martin, HP 2378/22.
In 2024, respondent brought MARTIN to court for repairs, Drammeh v Martin HP 3491/24.
DiscussionPetitioner's prima facie case is predicated on a notice to quit. It asserts that respondent came into possession as by intrusion or license from the prior owner which expired upon the prior owner's death in 2018. Respondent's first, second and third defenses state that petitioner failed to state the facts upon which the proceeding is based pursuant to RPAPL § 741. Specifically, RPAPL §741(1) requires that petitioner state the interest of the petitioner in the premises from which removal is sought; §741(2) state the respondent's interest in the premises and his relationship with regard thereto; §741(4) state the facts upon which the special proceeding is based.
Upon consideration of the evidence, testimony, court file and prior proceedings between the parties, the court concludes that petitioner failed to prove its prima facie case. Petitioner did not prove that respondent intruded on to the property. The evidence showed that respondent entered possession with permission of the prior owner. Robbins v DeLee, 34 AD2d 870 (App Div 3rd Dept 1970). Petitioner did not prove that respondent is a licensee. "A licensee is one who enters upon or occupies landlord by permission, express or implied, of the owner, or under a personal, revocable, non-assignable privilege from the owner, without possessing any interest in the property . . . " Rosenstiel v Rosenstiel, 20 AD2d 71 (App Div 1st Dept 1963).
Respondent is a tenant who obtained a possessory interest in the subject premises, by admission of the current owner and apparent authority of the prior owner, to act on behalf of the current owner by issuing leases, accepting rent and utility payments, and by performing the duties of an owner.
1. Admission of tenancy
This petitioner acknowledged respondent as a tenant when she issued a signed Notice of Termination to respondent on March 25, 2011. The notice states that:
PLEASE TAKE NOTICE that You, Bajen Drammah, are the tenant of the premises described as: all rooms, second floor, Apartment #2, 3348 Fenton Avenue, Bronx, New York 10469 . . .PLEASE TAKE NOTICE that the undersigned Landlord elects to terminate your tenancy of the subject premise. (R I) [emphasis added]In Jones Lang Wootton USA v LeBoeuf, Lamb, Greene & MacRay, 243 AD2d 168, 1998 NY Slip Op 03506 1998 NY Slip Op. 03507 (AD 1st Dept 1998), the court stated "[t]he doctrine [*5]of judicial estoppel or the doctrine of inconsistent positions "precludes a party who assume a certain position in a prior legal proceeding and who secured a judgment in his or favor from assuming a contrary position in another action, simply because his or her interests have changed." Even though no judgment was entered following this notice of termination, (possibly because PORTER "took care of it") MARTIN had no explanation at trial as to how and why respondent's status changed from tenant, in 2011, to squatter/licensee in 2023. Petitioner argues that a notice of termination does not create a tenancy, citing Stern v Equitable Trust Co., 238 NY 267 (1924). However, petitioner's intention to treat respondent as a tenant in 2011 is the relevant point; not whether a notice of termination, itself, created tenancy rights.
Moreover, at times MARTIN treated respondent as a tenant. The uncontroverted testimony at trial was that MARTIN (with PORTER) discussed adjusting respondent's rent payments in 2009; in 2020, MARTIN told respondent she would return to the building with a lease for her. 
2. Apparent AuthorityIn addition, petitioner gave PORTER apparent authority to act on her behalf as a respondent. PORTER transferred the building to MARTIN in 2007. MARTIN's skeptical narrative at trial is that although she did not know, and had never met, PORTER before the closing, but she allowed her to remain as an occupant on the first floor after closing until her death in 2018.
PORTER continued to do landlord jobs after MARTIN became the owner. When asked who shoveled snow, MARTIN replied "Isorine said she would do all that." PORTER's name continued to appear on utility bills for the subject premises, even after she died. (R B)
DRAMMEH signed leases in 2008, 2009, 2014 and 2015 with PORTER as landlord. DRAMMEH paid the electricity bill to PORTER. DRAMMEH testified that in 2009, PORTER asked DRAMMEH to meet MARTIN, "her partner". They met and raised the issue of DRAMMEH paying more rent. DRAMMEH said she could not afford it as she was paying for the electricity for other people in the building. MARTIN was silent at the meeting in 2009.
In Wenyi Liang v Tarantola 2019 NY Slip Op 51928(U), petitioner gave his son authority to assume rent collection, repairs and designated him as the contact before petitioner moved out of state. It was unclear who owned the premises among the owner's family. The court found it was reasonable to rely on the agent's authority. As stated in that case, "[a]pparent authority derives for the principal's conduct toward a third party that reasonable leads the third party to believe that the agent possesses the authority to enter a transaction. Hallock v State, 64 NY2d 224 (1984); Green v Hellman, 51 NY2d 2014; Federal Ins. Co. v Diamond Kamvakis & Co., 144 AD2d 45. Apparent authority arises from the conduct of the principal, not the agent, who does not acquire apparent authority through his own acts. Hallock, supra; Imburgio v Toby, 82 AD3d 653 (1st Dept 2011) ; 56 E. 87th Units Corp., v Kingsland Group, Inc. 30 AD3d 1134 (1st Dept. 2006). In Wenyi Liang, the court held:
If we accept, as petitioner contends, that he did not give authority to his son to issue a lease, we still must examine the action of petitioner and what respondent relied on based on those actions. "The existence of apparent authority depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal-not the agent." Ford v Unity Hosp., 32 NY2d 464.Petitioner argues that PORTER had no authority to act for MARTIN, absent a written [*6]document. The court finds the argument unpersuasive in view of MARTIN's inaction over PORTER's exercise of an owner's role for more than a decade. Petitioner also argues that the leases between PORTER and DRAMMEH are void ab initio citing Fortes v Estate of Magood, 160 AD2d 756 (2nd Dept 1990). In that case the court held the agent had no authority to enter a lease. This court has ruled here that PORTER had apparent authority to enter a lease. Petitioner's argument that DRAMMEH should have known that MARTIN was an owner is also unavailing. The cases cited by petitioner on constructive notice relate to mortgage business dealings with sophisticated real estate parties, which is not the case here. Regardless of who owned the property, PORTER acted on MARTIN's behalf.
ConclusionHaving determined that respondent is a tenant, the court does not determine on this record the type of tenancy respondent is subject to. Respondent made a strong argument that she occupies a room on the second floor in a single room occupancy (SRO) unit, and further argues that the building may, in fact, be de facto rent stabilized.[FN4]
However, the trial evidence was disputed (both parties denied creating the units) and not conclusive. No evidence was presented as to how these units were created; nor can the court conclude that there are two units in the basement based on the DOB and HPD records. A trier of fact would benefit from further development as to the facts needed to determine rent stabilization status.
It is therefore
ORDERED, that petitioner's case is dismissed;
ORDERED, that respondent's counterclaims are severed and preserved; and
ORDRED, that the parties are to retrieve their trial exhibits within 30 days of the date of this order.
This constitutes the decision and order of this court.
Dated: March 10, 2026Bronx, New York

Footnotes

Footnote 1:The parties introduced the following exhibits at trial:

For Petitioner:
Petitioner's 1: certified copy of the Deed;Petitioner's 2: certified copy of the Certificate of Occupancy;
Petitioner's 3: copy of an HPD Order to Repair/Vacate Order;
Petitioner's 4: copy of petition and notice of petition (NYSCEF No. 4) and amended answer; (NYSCEF No. 15)
Petitioner's 5: amended answer dated May 7, 2025.
For Respondent:Respondent's B: Con Edison bills;
Respondent's C: copies of a leases between Porter/Lobban and Drammeh;
Respondent's D: copies of rent receipts;
Respondent's E: OSC for Correction of Violations HP 36038/14;
Respondent's F: Cover page of holdover proceeding under Index No. 328362/23 Martin v James;
Respondent's Amended G: certified NYC DOB and HPD documents;
Respondent's H: video of second floor
Respondent's I: Notice of Termination
Respondent's J: Case Summary of LT-002378-22/BX, Drammeh v James and Martin;
Respondent's K: copy of Default order HP 3491/24; and
Respondent's L: subpoenaed records from DHPD.
Footnote 2:The court file could not be located. The final disposition of that case is not a part of the trial record.

Footnote 3:She also brought PORTER to court in 2014 for repairs HP Drammeh v Lobban 36038/14.

Footnote 4:Petitioner argued there can only be two units in the subject premises, based on the certificate of occupancy (P 2) and that the DOB and HPD violations reflect only one unit in the basement. The actual use of the building seems to have expanded beyond two apartments and into the basement (R G, R L). It is well settled that illegal units may be considered rent stabilized. Rosenberg v Gettes, 187 Misc 2d 790 (App Term 1st Dept 2000).